530

1 | **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2 | Name  AVALOS        JOSE        M.
      (Last)       (First)      (Initial)

3 |

    FEB 14 2008

    RICHARD W. WIEKING
    CLERK, U.S. DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA

4 | Prisoner Number ___ T-62425

5 | Institutional Address P.O. BOX 705, SOLEDAD, CALIF. 93960-0705

6 |

7 | **UNITED STATES DISTRICT COURT**
      **NORTHERN DISTRICT OF CALIFORNIA**

8 | JOSE MIGUEL AVALOS

9 | (Enter the full name of plaintiff in this action.)

      CV  08      0949

10 | vs.                                Case No. _____
                                        (To be provided by the clerk of court)

11 | BEN CURRY, WARDEN                  **PETITION FOR A WRIT**
                                        **OF HABEAS CORPUS**

12 | _____

13 | _____                E-filing

14 | (Enter the full name of respondent(s) or jailor in this action)

    WHA
    (PR)

15 |

16 | <u>Read Comments Carefully Before Filling In</u>

17 | <u>When and Where to File</u>

18 |    You should file in the Northern District if you were convicted and sentenced in one of these

19 | counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 | San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 | this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 | good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23 |    If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24 | one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 | District Court for the district in which the state court that convicted and sentenced you is located. If

26 | you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 | your petition will likely be transferred to the district court for the district that includes the institution

28 | where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1    <u>Who to Name as Respondent</u>

2        You must name the person in whose actual custody you are. This usually means the Warden or

3    jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4    you are imprisoned or by whom you were convicted and sentenced. These are not proper

5    respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7    but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8    custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9    was entered.

10   <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11       1. What sentence are you challenging in this petition?  19 YEAR PRISON SENTENCE

12           (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14               MONTEREY COUNTY SUPER. CT.   MONTEREY, CALIF.

15               Court              .                 Location

16           (b)    Case number, if known _SS02937A

17           (c)    Date and terms of sentence _JUNE 27, 2002/19 YEARS

18           (d)    Are you now in custody serving this term? (Custody means being in jail, on

19               parole or probation, etc.)        Yes _XX_    No _____

20               Where?

21               Name of Institution: CORRECTIONAL TRAINING FACILITY

22               Address: P.O. BOX 705, SOLEDAD, CA. 93960-0705

23       2. For what crime were you given this sentence? (If your petition challenges a sentence for

24   more than one crime, list each crime separately using Penal Code numbers if known. If you are

25   challenging more than one sentence, you should file a different petition for each sentence.)

26   664/187; 12022.5; 186.22

27

28

1    3. Did you have any of the following?

2        Arraignment:                                    Yes XX      No _____

3        Preliminary Hearing:                            Yes _____   No XX

4        Motion to Suppress:                             Yes _____   No XX

5    4. How did you plead?

6        Guilty _____   Not Guilty _____   Nolo Contendere X

7        Any other plea (specify) _____ N/A _____

8    5. If you went to trial, what kind of trial did you have?   N/A

9        Jury _____     Judge alone _____   Judge alone on a transcript _____

10   6. Did you testify at your trial?   N/A              Yes _____   No _____

11   7. Did you have an attorney at the following proceedings:

12       (a)   Arraignment                               Yes XX      No _____

13       (b)   Preliminary hearing   N/A                 Yes _____   No XX

14       (c)   Time of plea                              Yes XX      No _____

15       (d)   Trial  N/A                                Yes _____   No _____

16       (e)   Sentencing                                Yes XX      No _____

17       (f)   Appeal                                    Yes XX      No _____

18       (g)   Other post-conviction proceeding          Yes XX      No _____

19   8. Did you appeal your conviction?                   Yes XX      No _____

20       (a)   If you did, to what court(s) did you appeal?

21             Court of Appeal                            Yes XX      No _____

22             Year: 2002/2003   Result: JUDGEMENT AFFIRMED

23             Supreme Court of California               Yes _____   No XX

24             Year: _____   Result: _____

25             Any other court                           Yes _____   No XX

26             Year: _____   Result: _____

27

28       (b)   If you appealed, were the grounds the same as those that you are raising in this

1          petition?              Yes _____     No_XX_

2       (c)     Was there an opinion?       Yes _XX_     No_____

3       (d)     Did you seek permission to file a late appeal under Rule 31(a)?

4                                  Yes _____     No_XX_

5           If you did, give the name of the court and the result:

6           _____

7           _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?        Yes_XXX_     No_____

10        [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16       (a)     If you sought relief in any proceeding other than an appeal, answer the following

17                questions for each proceeding. Attach extra paper if you need more space.

18           I.     Name of Court: MONTEREY COUNTY SUPERIOR COURT

19                Type of Proceeding: HABEAS CORPUS

20                Grounds raised (Be brief but specific):

21                a._INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL_

22                b._TRIAL COURT ABUSE OF DISCRETION_

23                c._____

24                d._____

25                Result: DENIED         Date of Result: 3/23/07

26           II.     Name of Court: CALIF. CT. OF APP. SIXTH APP. DIST.

27                Type of Proceeding: HABEAS CORPUS

28                Grounds raised (Be brief but specific):

1      a. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

2      b. TRIAL COURT ABUSE OF DISCRETION

3      c. _____

4      d. _____

5      Result: DENIED _____ Date of Result: 5/10/07

6    III.  Name of Court: CALIFORNIA SUPREME COURT

7      Type of Proceeding: HABEAS CORPUS

8      Grounds raised (Be brief but specific):

9      a. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

10     b. TRIAL COURT ABUSE OF DISCRETION

11     c. _____

12     d. _____

13     Result: DENIED _____ Date of Result: 10/10/07

14   IV.   Name of Court: N/A

15     Type of Proceeding: _____

16     Grounds raised (Be brief but specific):

17     a. _____

18     b. _____

19     c. _____

20     d. _____

21     Result: _____ Date of Result: _____

22   (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                    Yes _____  No X

24     Name and location of court: _____

25   B. GROUNDS FOR RELIEF

26   State briefly every reason that you believe you are being confined unlawfully. Give facts to

27   support each claim. For example, what legal right or privilege were you denied? What happened?

28   Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS      - 5 -

1   need more space. Answer the same questions for each claim.

2        [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5        Claim One:____PLEASE SEE ATTACHED PETITION_____

6   _____

7        Supporting Facts:____PLEASE SEE ATTACHED PETITION_____

8   _____

9   _____

10  _____

11       Claim Two:_____PLEASE SEE ATTACHED PETITION_____

12  _____

13       Supporting Facts:_____PLEASE SEE ATTACHED PETITION_____

14  _____

15  _____

16  _____

17       Claim Three:_____PLEASE SEE ATTACHED PETITION_____

18  _____

19       Supporting Facts:_____PLEASE SEE ATTACHED PETITION_____

20  _____

21  _____

22  _____

23       If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:          N/A

25  _____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS          - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3  of these cases:

PLEASE SEE ATTACHED PETITION

4  _____

5  _____

6  _____

7  Do you have an attorney for this petition?                    Yes_____    No XX

8  If you do, give the name and address of your attorney:

9  _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on  3·)an - 08

14              Date                              Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS            - 7 -

JOSE MIGUEL AVALOS
CDCR #T-62425  RA-321L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD, CALIF. 93960-0705

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSE MIGUEL AVALOS, | ) | Case No. |
| | ) | |
| Petitioner, | ) | PETITION FOR WRIT OF HABEAS |
| | ) | CORPUS |
| -vs- | ) | 28 U.S.C. § 2254 |
| | ) | |
| BEN CURRY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |

COMES NOW, petitioner, Jose Miguel Avalos, pursuant
to 28 U.S.C. § 2254 et seq., and all other relevant and ap-
plicable rules, and hereby respectfully prays for the above
entitled court to issue forth immediately, a writ of habeas
corpus, thereby ordering the immediate and unconditional
release of petitioner therefrom further unconstitutional re-
straint of his liberty or, in the alternative, order peti-
tioner's no contest plea of which was induced by the fraudu-
lent misrepresentations of his trial counsel, to be immedi-
ately vacated to which petitioner further states as follows:

### I. STANDARD OF REVIEW

Citing 28 U.S.C. § 2254 (a) and the relevant portion
thereof: ["]The Supreme Court, a justice thereof, a circuit
judge, or a district court shall entertain an application
for writ of habeas corpus on behalf of a person in custody
pursuant to the judgement of a State court only on the ground

that he is in custody in violation of the [U.S.] Constitution
or laws or treaties of the United States.

Pursuant to § 2254 (b)(1), an application for a writ
of habeas corpus on behalf of a person in custody pursuant
to the judgement of a State Court shall not be granted unless
it appears that: (A) the applicant has exhausted the reme-
dies available in the courts of the State; or (B)(i) there
is an absence of available state corrective process; or (ii)
circumstances exist that render such process ineffective
to protect the rights of the applicant.

Federal habeas corpus relief is also not available for
any claim decided on the merits in state court proceedings
unless the state court's adjudication of the claim: (1) re-
sulted in a decision that was contrary to, or involved an
unreasonable application of clearly established law as de-
termined by the Supreme Court of the United States; or (2)
resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence pre-
sented in the state court proceeding. 28 U.S.C. § 2254 (d)
(1)(2); Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir.
2004). The "contrary to" and "unreasonable application"
clauses of § 2254 (d)(1) are different. As the U.S. Supreme
Court explained:

> ["]A federal habeas court may issue the writ
> under the "contrary to" clause if the state
> court applies the rule different from the
> governing law set forth in our cases, or if
> it decides a case differently than we have
> done on a set of materially indistinguishable
> facts. The court may grant relief under
> the "unreasonable application clause" if the
> state court correctly identifies the governing

2

> legal principle from our decisions but un-
> reasonably applies it to the facts of the
> particular case. The focus of the latter in-
> quiry is on whether the state court's appli-
> cation of clearly established federal law is
> objectively unreasonable, and we stressed in
> Williams v. [Taylor, 529 U.S. 362 (2000)]
> that an unreasonable application is different
> from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) cert. dismissed, 538 U.S. 919 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that [this] court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v.- Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Finally, it is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254 (d). See Woodford v. Visciotti, 537, 19, 25 (2002).

## II. JURISDICTION

The United States Supreme Court and the lower federal courts have jurisdiction over federal questions presented in state law proceedings. U.S. Const. Art. VI, cl. 2 (supremacy clause.) In state court criminal cases, the Supreme Court exercises this jurisdiction through its discretion to grant

writs of certiorari. (28 U.S.C. § 1254; U.S. Sup. Ct. R. 10-16); the lower federal courts have jurisdiction to hear habeas corpus petition brought by state prisoners. § 2254.

With rarely applicable exceptions, eligibility for federal review of a state court conviction requires the defendant to first seek relief in the state court of last resort--the highest state court in which the defendant is entitled to seek relief. 28 U.S.C. § 1257 (a); U.S. Sup. Ct. R. 13.1 (Certiorari.); 28 U.S.C. § 2254 (B)(1) (requiring exhaustion of state court remedies by habeas corpus petitioner's.) For defendants convicted of felonies, the court of last resort in the state of California is the California Supreme Court.

Here, in this case, as it is that petitioner has in fact exhausted all available state court remedies as so required of him, this court is thus the appropriate court of jurisdiction to hear and entertain this instant petition.

### III. EXHAUSTION OF REMEDIES

As noted in the latter above (section II), petitioner has exhausted the state court remedies as so required of him pursuant to 28 U.S.C. § 2254 (b)(1)(A) in having presented the issues contained herein this instant petition infra to the California Supreme Court which denied relief as noted therein the statement of the case below infra.

### IV. STATEMENT OF THE CASE

By way of information filed on February 27, 2002, petitioner was charged with two felony violations with gun and gang enhancement allegations charged therewith as fo-

4

llows: Count One: attempted (non-premeditated) murder (California Penal Code--P.C.) §§ 664/187[1/] where it was alleged that petitioner committed such crime for the benefit of a criminal street gang and where it was further alleged that petitioner personally used a gun in the commission of such crime (P.C. §§ 186.22 B and 12022.5) (CT 1-2.)[2/]; and Count Two: assault with a firearm on a person (P.C. § 245 (A)(2)) where it was alleged,  as in count one, that petitioner committed such crime for the benefit of a criminal street gang, and where it was further alleged that petitioner personally used a gun in the commission of such crime (P.C. §§ 186.22 B and 12022.5). (CT 2-3.)

On May 28, 2002, petitioner entered negotiated no contest pleas to attempted (non-premeditated) murder and two (gun/gang) enhancement allegations where it was stipulated that petitioner would receive no more than 19 years in state prison. RT 3.

On June 27, 2002, petitioner was formally sentenced to 19 years in prison as follows: the low term of five years for the attempted murder charge, the middle term of four years for the gun use, and 10 years for the gang enhancement. RT 12 (254)-13 (255).

Petitioner filed a timely notice of appeal (CT 47) wherewhich he raised thereon appeal a sole claim concerning excessive restitution.

---

1/. All statutory references are to the penal code unless otherwise noted.

2/. CT stands for Clerks Transcripts on Appeal; RT stands for Reporters Transcripts on Appeal.

5

In an unpublished opinion filed in the latter part of
2003, the Sixth Appellate District Court of Appeal issued
an order that petitioner's restitution fine be reduced.

Petitioner did not seek review from the California Su-
preme Court.

Petitioner ultimately filed a habeas corpus petition
therein the Monterey County Superior Court in January of
2007, complaining of ineffective assistance of trial counsel,
trial court abuse of discretion, and cumulative impact of
error. Such petition was denied on March 23, 2007.

Petitioner then filed another habeas petition therein
the Sixth Appellate District Court of Appeal presenting the
same latter said issues wherewhich such petition was denied
on May 10, 2007.

Petitioner then filed a habeas corpus petition therein
the California Supreme Court presenting the same latter said
claims wherewhich the petition was denied on October 10,
2007. This petition follows.

## V. STATEMENT OF FACTS

On February 18, 2002, at approximately 4:30 p.m., police
responded to a shooting where eyewitnesses reported gunshots
being fired from a green car upon a black SUV at an intersect-
ion in Salinas, California. The victim of the shooting was
taken to the Natividad Medical Center where police officials
contacted him. CT 18.

The 17 year old victim and an RN employed there at the
medical center informed police officials that while he (the
victim) was stopped at a stop sign, he heard a "pop" followed

6

by the shattering of his front passenger window of the vehicle
of which he was driving. CT 18.

Police later recovered a bullet therefrom the front
passenger door. CT 18.

The victim said that as he drove away, he noticed that
he could not feel his right arm. CT 18. He first drove to
his girlfriend's house and then to his father's house. His
father then drove him to the hospital where it was determined
that his wound was not life threatening. CT 18. The bullet
had entered just below the victim's right armpit causing
injury to the surrounding tissue and muscle. CT 19. Hospital
officials did not plan to remove the bullet. CT 19.

The victim admitted to being a member of a sub-faction
of the Norteno Gang. According to Salinas police officials,
he (the victim) is a registered member of the las Casitas
gang. CT 18. However, the victim said he did not notice
any gang signs or colors and that the shooter did not speak
to him. CT 19.

A witness said the driver fired three to four shots at
the black SUV from a green older model four-door car similar
to a Cadillac. There were three people in the green car
and the passengers therein ducked when the driver began shoot-
ing. CT 19

On February 24, 2002, at approximately 11:15 p.m., police
contacted petitioner in a green four-door 1987 Cadillac parked
at a Quik Stop market. Petitioner was seated in the driver's
seat and at such time provided police with a California Identi-
fication Card. Petitioner's companion, Omar Mondragon, dumped

7

an item into the trashcan inside the store.  Police located a
loaded handgun inside the trashcan.  Petitioner's car was then
searched without incident where petitioner was then released.
Petitioner's companion was placed under arrest. CT 19.

Police later realized that petitioner's car fit the de-
scription identified in the abovesaid shooting.  A witness
had provided a partial license plate number of UVT45 where
petitioner's vehicle plates were 4UTV518. CT 19.

On February 26, 2002, at approximately 4 p.m., police
contacted petitioner regarding his (suspected) vehicle. He
was arrested for driving with a suspended license. CT 19.  Upon
searching the vehicle, police found a .25 caliber casing in the
map pocket on the back of the driver's seat.  Another .25 ca-
liber casing was located inside the car.  Police found two
methamphetamine pipes in an unlisted location inside the car.
CT 19.

Petitioner initially told police that on the day of the
shooting, he drove and "Nigger" was responsible for the shoot-
ing.  He then said that on an unknown date, he was walking
in an alley at night and a black Blazer stopped nearby.
One person from the vehicle put a gun to his head and placed
a knife to his throat. CT 19.  The attacker asked, "where
are you from" and petitioner told him that he didn't "claim"
and not to hurt him. CT 19-20.[3/]  They called him a "little"

_____

3/. Despite petitioner's equivocal stories, he nonetheless
maintains his vehement stance to date, that he is not a gang
member or associate of any gang whatsoever where to date, there
exists no evidence to suggest otherwise. See Exhibit (Exh.) C
attached hereto infra.

bitch and told him to get on his knees.  They then got into
the Blazer and drove away.  CT 20.

On the day of the shooting, petitioner recognized the
vehicle from the attack and became enraged at remembering
how he was treated.  Petitioner said that he was driving
and someone called "Nigger" and Nigger's friend were passen-
gers in the car.  Nigger had a .25 caliber semi-automatic
handgun.  Petitioner reached over and grabbed the gun and
fired the gun at the person in the SUV and then drove away.
Petitioner said that he did not know if the person he fired
upon was the same person who attacked him.  CT 20.

Upon being interviewed at the Monterey County Jail,
petitioner vehemently denied being a member of or an associate
of  the Sureno Gang or "any" gang.  He denied telling jail
staff that he was a Sureno at booking but said that jail
officials took it upon themselves to list him as a gang member
due to the shooting [victim being a "Norteno" gang member.]
CT 20.

Petitioner said that he was with the wrong people at
the wrong time.  Petitioner stated: "I don't think it is
right that I'm here and they are not" [referring to the other
two occupants of his vehicle the day of the shooting.] CT 20.

Petitioner said that he let "Nigger" drive his car be-
cause he (petitioner) was under the influence of meth.  A
friend of Nigger was also in the car.  CT 20.

Petitioner said he did not know "Nigger had a gun.  Then
Nigger shot at the person in the SUV and said the man was
a Norteno.  Petitioner said he told police the story about

9

being beat up in the alley but that it didn't happen." He
said he was taking the rap for the safety of 'my' family
and me." He said if he told the truth, he would have
"another problem." CT 20.

The victim has since recovered from his injury and is
not experiencing any continued problems from such injury.
He also said that he would attend court. CT 21.

### VI. GROUNDS FOR RELIEF

Petitioner avers that he is unlawfully restrained of
his liberty by the California Department of Corrections and
Rehabilitation (CDCR), specifically at the Correctional
Training Facility (CTF), located in Soledad, California,
where Ben Curry is Warden, pursuant to conviction(s) and
sentence(s) of which he suffered in the Monterey County
Superior Court under Case No. SS02937A. Petitioner
conjunctly avers that such convictions/sentences should be
set aside in habeas corpus for the following reasons/grounds:

I-A. **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM
THAT TRIAL COUNSEL PROVIDED DEFICIENT PERFORMANCE
WHEN HE INDUCED AND COERCED PETITIONER INTO
PLEADING NO CONTEST BY GROSSLY OVERESTIMATING THE
MAXIMUM PENALTY EXPOSURE FOR THE CRIMES OF WHICH
PETITIONER WAS CHARGED THUS AND LIKEWISE GROSSLY
MISCHARACTERIZING THE LIKELY OUTCOME AND POSSIBLE
EFFECTS OF GOING TO TRIAL WAS OBJECTIVELY
UNREASONABLE.**

I-B. **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM
THAT TRIAL COUNSEL PROVIDED DEFICIENT PERFORMANCE
WHEN HE ERRONEOUSLY STIPULATED TO THE FACTUAL
BASIS OF THE PLEA AMID THERE BEING VIRTUALLY NO
EVIDENCE TO SUPPORT THE GANG ALLEGATION WAS
OBJECTIVELY UNREASONABLE.**

I-C. **THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM
THAT TRIAL COUNSEL WAS DEFICIENT IN FAILING TO
INVESTIGATE THE CASE BEFORE ADVISING PETITIONER
TO PLEAD NO CONTEST WAS OBJECTIVELY UNREASONABLE.**

I-D. THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM
THAT TRIAL COUNSEL WAS DEFICIENT WHEN HE FAILED
TO PREPARE FOR TRIAL WAS OBJECTIVELY UNREASONABLE.

I-E. THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM
THAT TRIAL COUNSEL WAS DEFICIENT WHEN HE FAILED
TO ADVISE PETITIONER OF A POTENTIAL DEFENSE WAS
OBJECTIVELY UNREASONABLE.

I-F. THE STATE COURT'S ADJUDICATION OF PETITIONER'S
INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS WAS
CONTRARY TO/AN UNREASONABLE APPLICATION OF
CLEARLY ESTABLISHED FEDERAL LAW AND LIKEWISE
AN UNREASONABLE DETERMINATION OF THE FACTS IN
LIGHT OF THE EVIDENCE PRESENTED.

II-A. THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM
THAT THE TRIAL COURT ABUSED ITS DISCRETION IN
HAVING FAILED TO ENSURE THAT AN ADEQUATE FACTUAL
BASIS FOR THE PLEA EXISTED WAS OBJECTIVELY
UNREASONABLE.

III-A. THE TRIAL COURT'S REJECTION OF PETITIONER'S CLAIM
OF CUMULATIVE ERROR WAS OBJECTIVELY UNREASONABLE.

IV-A. THE STATE COURT'S FAILURE TO CONDUCT AN
EVIDENTIARY HEARING WAS OBJECTIVELY UNREASONABLE.

## VII. NO OTHER REMEDY AT LAW

Petitioner has no other plain, speedy, or adequate remedy
in the ordinary course of the law to have entertained and
heard, the claims contained herein this instant petition.

## VII. PRAYER FOR RELIEF

WHEREFORE, petitioner prays for relief as follows:

1. For a writ of habeas corpus to issue directing the
Director of the CDCR and petitioner's immediate custodian,
to wit, Ben Curry, Warden at CTF, to bring petitioner before
the appropriate court of jurisdiction to show then why his
no contest plea should not be vacated.

2. For petitioner's no contest plea to ultimately be
vacated.

3. For any other relief deemed appropriate and just by this court to be granted just the same, including, but not limited to, this court conducting an evidentiary hearing so as to resolve all mixed questions of law and fact and other issues that need resolving in such a hearing.

Executed on this 3 day of January, 2008.

By: _____
    Jose Miguel Avalos
    CDCR #T-62425   RA-321L
    C.T.F. North Facility
    P.O. Box 705
    Soledad, Calif. 93960-0705

12

JOSE MIGUEL AVALOS
CDCR #T-62425  RA-321L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD, CALIF. 93960-0705

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MIGUEL AVALOS, ) | Case No._____ |
| ) | |
| Petitioner, ) | MEMORANDUM OF POINTS AND |
| ) | AUTHORITIES IN SUPPORT OF |
| -vs- ) | PETITION FOR WRIT OF HABEAS |
| ) | CORPUS |
| BEN CURRY, WARDEN, ) | |
| ) | |
| Respondent. ) | |
| ) | |
| _____ ) | |

### GROUND I-A.

**THE STATE COURTS' REJECTION OF PETITIONER'S CLAIM THAT
TRIAL COUNSEL PROVIDED DEFICIENT PERFORMANCE WHEN HE
INDUCED AND COERCED PETITIONER INTO PLEADING NO CONTEST
BY GROSSLY AND FALSELY OVERESTIMATING THE MAXIMUM
PENALTY EXPOSURE FOR THE CRIMES OF WHICH PETITIONER
WAS CHARGED THUS AND LIKEWISE GROSSLY MISCHARACTERIZING
THE LIKELY OUTCOME AND POSSIBLE EFFECTS OF GOING TO
TRIAL WAS OBJECTIVELY UNREASONABLE.**

In rejecting petitioner's Ineffective Assistance of

Counsel (IAC) claims based on gross mischaracterization/over-

estimation of the penalty exposure, the state court(s)

reasoned that: (1) petitioner's claims that trial counsel

informed him he was facing a maximum of 69 years to life

is wrong; (2) according to the waiver of rights/plea of no

contest form that petitioner signed, he was advised that

the maximum possible sentence he could receive was 24 years

plus four years on parole; (3) petitioner failed to show

prejudice, i.e., failing to show that he was prepared to go to trial; and (4) given the disparity between the terms of the proposed plea bargain and probable consequences of proceeding to trial, petitioner's self-serving statement, after the fact, that he would have insisted on going to trial is insufficient to sustain his burden of proof as to prejudice. See p. 2 of Super. Ct. Order denying Habeas Pet. attached hereto infra as Exhibit (Exh.) A (hereinafter "Exh. A.")

Petitioner avers however, as discussed more fully below, that the abovesaid reasoning is misplaced and thus must fail.

**I-A-1. Petitioner's "Claim" of Being "Informed" By Counsel.**

Simply put, far contrary to that which the state court(s) reasoned, petitioner's claim that he was informed by trial counsel that he faced a maximum sentence of 69 years to life for all of the crimes originally/initially charged prior to the court dismissing various counts pursuant to the plea bargain, is a valid claim amply supported by credible evidence.

For example, in addition to the credible and verified declarations of petitioner and his mother, Graciela Avalos (see Exh.'s B and C hereto), petitioner cogently outlined therein his state habeas petition(s)--as was explained to him by trial counsel--the maximum numerical penalty exposures as to each of the crimes of which he was initially charged. Particularly, petitioner outlined clearly that his counsel: (1) informed him and his mother/family and family pastor

2

(Exh.'s B-C) that the attempted murder count carried a maximum
term of 25 years to life; (2) the gang enhancement alleged
therewith the attempted murder charge carried a mandatory
minimum term of 10 years; (3) the gun enhancement alleged
therewith the attempted murder charge carried a maximum term
of 10 years; (4) the assault with a firearm charge carried
a maximum term of four years; (5) the gang allegation charged
therewith the latter charge carried a mandatory minimum term
of 10 years; and (6) the gun allegation alleged with the
assault with a firearm charge carried a maximum term of 10
years--for a total of 69 years to life.

    Besides the mere conclusory allegation to the contrary,
the state court(s) failed to show that petitioner's "claim"
is wrong.

## I-A-2. **The Waiver of Rights Form**.

    In diametric contrast to that which the state court(s)
tend to imply, the waiver of rights/plea agreement form of
which petitioner signed does not state the maximum sentence
of which petitioner could receive for all of the crimes of
which he was initially charged with prior to his entering
a plea bargain. The waiver of rights form at best, states
the maximum sentence for the crimes of which petitioner
pleaded no contest to and nothing more. Exh. D hereto. In
fact, the maximum sentence depicted thereon the waiver of
rights form appears to be wrong and off base. First, while
the form states a "maximum of 24 years," any combined
configuration of the sentences for the crimes stated thereon

3

such form does not meet up to a maximum of 24 years.  The
attempted murder charge of which petitioner pleaded no contest
to carries terms of five, seven, and nine years; the gang
allegation carries a mandatory term of 10 years; and the
gun allegation carries terms of three, four, and 10 years.
Accordingly, any combined mathematical configuration of either
of the abovesaid sentences simply fail to pan out to a 24
year term (maximum or minimum or intermediate-wise.)

    Finally, even assuming arguendo that the assault with
a firearm charge and its corresponding gang/gun allegations
were to be incorporated therein the 24 year maximum sentence,
such "incorporation" still fails to pan out to a 24 year
sentence under any legal configuration.  Being so, the state
court's contrary reasoning is clearly misplaced, and thus
must fail.

## I-A-3. Prejudice and Preparedness to Go to Trial.

    The state court(s) tends to imply therein its reasoning
that petitioner's failure to show that he was prepared to
go to trial equals a failure to show prejudice.  The state
court is wrong.

    To establish prejudice as to a claim of IAC in the
context of a guilty plea, the petitioner must allege and
show that there is a reasonable probability that, but for
counsel's errors, he would have insisted on going to trial.
**Hill v. Lockhart, 474 U.S. 58-60 (1985).**  To be sure, a
petitioner need not show that he would have prevailed at
trial, only that there was a reasonable probability that

he "would have gone to trial." **U.S. v. Hanson**, **339 F.3d 991** **(D.C. Cir. 2003)**.

In this instant case, the state court failed to point to any authority that suggests that a petitioner must show that he was "prepared" to go to trial in order to show prejudice in the context of a guilty plea. Moreover and more importantly, petitioner alleged and showed with clarity and particularity (**Hill**, at pp. **58-60**) that there was more than a reasonable probablility he would have insisted on going to trial had he been correctly informed by counsel.

**I-A-4. Disparity and Petitioner's Self-Serving Statement**.

Incorporating Ground I-A-2 supra by reference as if rewritten herein, the waiver of rights form fails to depict the actual disparity between the proposed plea bargain and consequences of petitioner proceeding to trial for "all" of the crimes of which he was initially charged with prior to the plea bargain. In fact, as explained ante, the waiver of rights form fails to even depict the correct disparity and consequences for the charges involved in the plea agreement.

Further, the state fails to point to any authority in support of its stance that "after the fact" statements and declarations as a whole, let alone, those of petitioner's and his mother's, are insufficient per se, to sustain a [petitioner's] burden of proof as to prejudice. Put another way, the fact that the record in this case fails to contain an on-the-record "before the fact" statement

5

contesting the plea does nothing in the least to negate

petitioner's claim or to bolster the state's claim.

Accordingly, the state court's contrary reasoning must fail.

## GROUND I-B.

**THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THAT TRIAL COUNSEL PROVIDED DEFICIENT PERFORMANCE WHEN HE ERRONEOUSLY STIPULATED TO THE FACTUAL BASIS OF THE PLEA AMID THERE BEING VIRTUALLY NO EVIDENCE TO SUPPORT THE FACTUAL BASIS AS TO THE GANG ALLEGATION WAS OBJECTIVELY UNREASONABLE.**

In rejecting petitioner's IAC claim concerning trial

counsel's erroneous stipulation as alleged in the caption

above, the state court reasoned that: (1) petitioner failed

to show that counsel's performance was deficient; (2)

petitioner voluntarily pled nolo contendre, thereby

admitting the crimes as indicative of the waiver of rights

form; (3) per the waiver form and the oral admonitions of

the trial court, petitioner was advised that he would be

giving up certain rights; (4) after petitioner was

questioned, the court found that he understood the nature

of the charge and possible penalties and other consequences

of the plea; and (5) petitioner stated on the record that

he had read and understood the acknowledgement of the

waiver form. See Exh. A at p. 3.

As explained more fully below, petitioner avers that

the abovesaid reasoning is misplaced, and thus must fail.

## I-B-1. Counsel's Performance.

As petitioner pointed out therein his state habeas

petition(s), counsel engaged in a bare stipulation as to

the factual basis of the charges involved in the plea

6

bargain. Specifically, counsel merely stated, in response
to the trial court's inquiry: "stipulate there's a factual
basis for the plea." RT 4. Based on such response, the trial
court found there to be an adequate factual basis for the
plea. Petitioner went on, therein his state habeas
petition(s), to note via a plethora of supportive case
authority, that counsel's bland stipulation to the factual
basis without referencing any particular document was
unquestionably deficient performance. See e.g., **People v.-
Holmes**, **9 Cal. Rptr.3d 683-684 (2004)**; **People v. Watts**, **136
Cal. Rptr. 496 (1977)**. Particularly in **Watts**, the sole
reference to the factual basis came in a statement by **Watts's**
attorney, who stated that he advised **Watts** of the legal
consequences of a guilty plea. **Id**. at p. **496**. The **Watts**
court found this statement insufficient to meet the
requirements of **California Penal Code (P.C.) § 1192.5**. ["Such
a stipulation reveals no more of a factual basis supporting
the plea than the plea itself."] **Holmes**, **supra** at p. **685
fn.8**; **People v. McGuire**, **1 Cal. Rptr.2d 846**. Although the
**Watts** court found counsel's "bare stipulation" error, it
nonetheless found such error harmless in that there was ample
documentation contained therein the record to provide a
sufficient factual basis for the plea. **Watts**, **supra** at p.
**496**.

In this case, counsel, presumably cognizant of such
longstanding (**Watts**) authority, undoubtedly should have
ensured that an adequate factual basis existed by way of

7

referencing some document of the record that contained the
same--especially given the fact that, unlike **Watts**, the
documentation containing a sufficient factual basis in this
case was not ample, but in fact, virtually nonexistent.
For example: (1) there was never a preliminary hearing
conducted in this case, thus there exists no transcript of
the same to reference; (2) a detailed perusal of the police
reports in this case fail to establish an adequate factual
basis for the plea--namely with regards to the gang
allegation; (3) the probation report, at most, merely suggests
that petitioner associated with unspecified "Surenos" therein
the jail post crime--and nothing more; (4) the charging
information itself fails to provide an adequate factual basis,
namely with regards to the gang allegation, in that its mere
citing of "SURENO" simply fails (see **People v. Valdez**, 68
**Ca. Rptr.2d 144 (1997)**; (5) the waiver of rights form merely
states the statutory codes of which petitioner pled to and
nothing more; and (6) petitioner's "bare admission" in court
to the gang allegation (at the prodding of counsel's deficient
advice as outlined herein ante) simply fails where the court's
inquiry to petitioner was merely: "...and this was done to
assist the criminal conduct of 'a gang'...." (See **Valdez**,
**supra** at p. 144.) Also see **In re Alvernez**, 8 **Cal. Rptr.2d**
**718 (1992)** (quoting **People v. West**, 91 Cal. Rptr. 385--a
plea of nolo contendre [does not admit] a factual basis of
a plea.)

 Accordingly, counsel's stipulation was deficient

performance.

## I-B-2. Petitioner's Right to Participate in the Stipulation.

Great effort is not required to realize that establishing
a factual basis for a guilty plea is a fundamental aspect
of the operations of plea bargains. Simply put, without
a factual basis being established, the plea bargain would
be unenforceable. Because of the fundamental nature inherent
within the establishment of a factual basis, a defendent,
as such, possesses a constitutional right to actively
participate in such factual basis. "[A] defendant possesses
a constitutionally protected right to participate in the
making of certain decisions which are fundamental to his
or her defense." In re Alvernez, supra at p. 721 (quoting
Jones v. Barnes, 463 U.S. 745, 751 (1983); Johnson v.
Duckworth, 793 F.2d 898, 900-901 (7th Cir. 1986).) Moreover,
the court in Strickland v. Washington, 466 U.S. 688 (1984)
explained that counsel's responsibilities incident to ensuring
a fair trial include "the overreaching duty to advocate the
defendant's cause and the more particular duties to consult
with the defendant on important decisions and to keep the
defendant informed of the important developments of the
prosecution."

In this case, the act of stipulating to the factual
basis of petitioner's plea was unquestionably a decision
fundamental to his criminal proceedings. Being so, petitioner
possessed a vested right to participate in the stipulation
at instant issue. Yet, due to counsel's deficient

performance, petitioner was deprived of such right to
participate in such stipulation. The only stipulation of
which petitioner acknowledged and participated in was with
regards to the court's mere recitation of the "19 year
stipulated sentence"--and nothing more. Had counsel explained
to petitioner what adequately constituted a factual basis
and as well, informed him of his right to participate, it
is quite probable--given the broad and grave magnitude of
counsel's deficient and prejudicial performance outlined
thus far herein--that petitioner would not have agreed to
such stipulation, but instead would have expressed vehement
opposition to the same--namely with regards to the gang
allegation.

## I-B-3. **Petitioner's Purported Failure to Show Prejudice.**

For the same reasons discussed herein ante, the state
court's claim, in the context of which it reasoned, as to
petitioner's purported failure to show prejudice with regards
to Claim I-B herein, simply fails.

### GROUND I-C.

**THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THAT
TRIAL COUNSEL PROVIDED DEFICIENT PERFORMANCE WHEN HE
FAILED TO INVESTIGATE THE CASE BEFORE ADVISING
PETITIONER TO PLEAD NO CONTEST WAS OBJECTIVELY
UNREASONABLE.**

In rejecting petitioner's IAC claim of counsel failing
to investigate the case, the state court reasoned that: (1)
even assuming arguendo that counsel's performance was
deficient, petitioner failed to show prejudice by failing
to (i) show that he was prepared to go to trial; and (ii)

10

given the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, petitioner's self-serving statement that he would have insisted on going to trial is insufficient to sustain his burden of proof as to prejudice. See Exh. A at p. 4.

As explained more fully below, the state court's abovesaid reasoning is wrong.

I-C-1. **Prejudice.**

Incorporating Ground I-A through I-B supra by reference as if rewritten herein, petitioner has colorably established thus far that the state court's stance concerning prejudice is simply off-base. Because so, such stance must be rejected.

### GROUND I-D.

**THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THAT TRIAL COUNSEL PROVIDED DEFICIENT PERFORMANCE WHEN HE FAILED TO PREPARE FOR TRIAL WAS OBJECTIVELY UNREASONABLE.**

The state court(s) rejected this aspect of petitioner's IAC claims by reasoning that: (1) petitioner voluntarily chose to enter a plea instead of going to trial; and (2) to the extent this claim relates to petitioner's [failure to investigate] claim, this claim fails for the same [prejudice] reasons. See Exh. A at p. 4.

Petitioner avers, as discussed more fully below, that the abovesaid reasoning is misplaced and thus must fail.

I-D-1. **Petitioner's Voluntary Choice to Enter a Plea.**

Incorporating Ground I-A through I-C supra by reference as if rewritten herein, petitioner has evinced with clarity that his choice to enter a plea instead of going to trial

11

is a choice that is rendered involuntary due to trial
counsel's deficient performance. Simply put, had petitioner
been correctly informed by counsel as to the correct
characterizations of his sentencing exposure, coupled with
the fact had counsel properly investigated the case and
prepared for trial--namely with regards to the gang
allegation--petitioner unquestionably would have insisted
on proceeding to trial. See Petitioner's verified declaration
hereto. Yet, even amid the above, the state court(s) tend
to conveniently ignore the fact that petitioner's "voluntary
choice" to plead as he did in this case is severely undermined
by counsel's deficient and prejudicial performance. Any
contrary reasoning must fail.

## I-D-2. Prejudice.

For reasons explained at length ante, the state court's
repeated and echoing "failure to show prejudice" claim must
fail.

### GROUND I-E.

**THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THAT
TRIAL COUNSEL PROVIDED DEFICIENT PERFORMANCE WHEN HE
FAILED TO ADVISE PETITIONER OF A POTENTIAL DEFENSE WAS
OBJECTIVELY UNREASONABLE.**

In rejecting petitioner's claim that trial counsel failed
to advise him of a potential defense, the state court reasoned
that: (1) petitioner failed to identify specifically what
defense existed; (2) petitioner failed to show the defense,
if any, that would have succeeded at trial; and (3) assuming
arguendo that counsel's performance was deficient, petitioner
failed to show prejudice. See Exh. A at p. 4.

12

As discussed more fully below, petitioner avers that the state court's abovesaid reasoning is misplaced, and thus should be rejected.

### I-E-1. Specific Potential Defense(s).

As petitioner credibly outlined therein his state habeas petitions, there was virtually no evidence of substantial worth to support a true finding of the gang allegation. As such, far contrary to that which the state court(s) surmised, the very (potential) defense amply identified therein petitioner's state habeas petitions was that of "Insufficient Evidence" to support every element of the gang allegation.

### I-E-2. Likelihood of Success at Trial.

The very fact that there was virtually no evidence of credible worth to support every element of the gang allegation in this case renders the defense of "Insufficient Evidence" a defense that more than probably would have succeeded at trial. As petitioner duly explained therein his verified state habeas petitions, petitioner has absolutely no history of gang involvement; and the victim himself stated unequivocally that he did not notice any gang signs or hear any gang slogans at the time of the shooting. Moreover, petitioner had tangibly available for trial counsel's convenient disposal, a plethora of character witnesses who could/would have shedded substantial "light" in support of such defense--all of which counsel failed to, inter alia, investigate. See Exh. E hereto.

13

Finally, the record evidence in this case painfully fails to show a modicum of credible evidence to support the gang allegation.

Accordingly, it is more than likely that petitioner's defense as to the gang allegation would have succeeded at trial.

**I-E-3. Prejudice.**

For reasons explained at length ante, the state court's replicated stance of petitioner purportedly having "failed to show prejudice" simply fails.

**GROUND I-F.**

**THE STATE COURT'S CONTRARY TO/UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW/UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED AS TO PETITIONER'S IAC CLAIMS.**

The clearly established federal law that governs petitioner's IAC claims is that of **Strickland v. Washington**, **supra** at p. **668**; **Hill v. Lockhart**, **supra** at pp. **52, 58-60**.

Under **Strickland**, to establish ineffective assistance of counsel, a convicted defendant must show: (1) that his counsel's performance was deficient and fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense, i.e., that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different. **Strickland**, at pp. **687, 691-692**. Although trial counsel's decisions are entitled to deference to avoid second guessing tactical choices, deference is not abdication

14

and must never be used to insulate counsel's performance
from meaningful scrutiny. **Ibid**.

Guided by the two prong analysis set forth in **Strickland**,
to establish IAC in the context of a guilty plea, the
petitioner must show that counsel's advice was defective
and prejudicial. **Hill**, **supra** at pp. **52, 59**. To show
prejudice, the petitioner must allege and show that there
is a reasonable probability that, but for counsel's errors,
he would have not pleaded guilty [but instead] would have
insisted on going to trial. **Hill**, **supra** at pp. **58-60**. To
be sure, a petitioner need not show that he would have
prevailed at trial, only that there was a reasonable
probability that he "would have gone to trial." **U.S. v.
Hanson**, **supra** at p. **991**.

In this case, incorporating Ground I supra in its
entirety by reference as if rewritten herein, petitioner
has colorably shown that the state court's tacit application
of controlling federal law as to petitioner's IAC claims
was clearly both, contrary to, and an unreasonable application
of clearly established federal law, and likewise, an
unreasonable determination of the facts in light of the
evidence presented. For example, the state court repeatedly
relied upon a "prejudice analysis", i.e., petitioner not
having shown he was prepared to proceed to trial, that was
clearly contrary to the clearly established federal (prejudice
analysis) law of **Hill**. Moreover, the state court failed
to point to any authority that supports its version of

15

prejudice.

As to the state court's eventual identification of the
correct (federal) prejudice analysis, that is, the need for
petitioner to show that he would have insisted on proceeding
to trial (**Hill**, **supra** at pp. **58-60**), its application of such
federal law, as cogently explained at length ante, was
nonetheless simply unreasonable.

Finally, given the facts of this case as they favorably
support petitioner's overall stance, the state court's
determination of the same in light of the evidence presented
in this case, was objectively unreasonable.

### GROUND II-A.

**THE STATE COURT'S REJECTION OF PETITIONER'S CLAIM THAT
THE TRIAL COURT ABUSED ITS DISCRETION IN HAVING FAILED
TO ENSURE THAT AN ADEQUATE FACTUAL BASIS FOR THE PLEA
EXISTED WAS OBJECTIVELY UNREASONABLE.**

In rejecting petitioner's claim of trial court abuse
of discretion as captioned above, the state court reasoned:
(1) the trial court made an inquiry to petitioner to satisfy
itself that the plea was freely and voluntarily made and
that there was a factual basis for the plea; (2) petitioner
filled out, initialed, and signed a two-page superior court
no contest plea form; (3) trial counsel stipulated there
was a factual basis for the plea; and (4) the trial court
properly accepted the factual basis for the plea. See Exh.
A at p. 5.

Petitioner avers, as discussed more fully below, that
the abovesaid reasoning is misplaced, and thus must fail.

## II-B. **The Trial Court's Inquiry**.

Petitioner set forth a landscape of persuasive authority therein his state habeas petitions, e.g., **United States v.- Van Buren**, **804 F.2d 888, 892 (6th Cir. 1986)** and **People v.- West**, **supra** at p. 385 to support substantially, his overall position at instant issue. For example, the court in **Van- Buren** held that: ["]Reading of indictment and defendant's admission of guilt is not sufficient factual basis determination...." **Van Buren**, **at p.** 892. Moreover, the court in **West** noted that a plea of nolo contendre [does not admit] the factual basis of a plea. **West**, at p. 385.

In this case, the state court's contention that the trial court's overall inquiry to petitioner was sufficient is simply unavailing--especially in light of the grave and poor performance of trial counsel as outlined herein ante (all of which renders petitioner's admission involuntary.)

Moreover, the trial court's failure to reference any other document(s) of the record in an effort to garner a factual basis as petitioner has shown ante that relevant case authority suggests, serves to undermine even more, its mere and bland inquiry to petitioner.

Finally, because petitioner was statutorily entitled to have the court reference other documents to establish a factual basis **for** the plea--amid the particular circumstances of this case--and because the trial court deprived petitioner of such state law entitlement, such deprivation, as explained more fully post, infringed upon

17

petitioner's substantial rights.

## II-C. Petitioner's Signing of the Waiver Form.

Incorporating Ground I supra in its entirety by reference
as if rewritten herein, petitioner has adequately argued
that the mere fact of his signing the waiver of rights form
does nothing to undermine his claims--especially given the
egregious and infirm performance of trial counsel duly
explained ante.  The state court's contrary reasoning thus
must fail.

## II-D. Counsel's Stipulation.

Incorporating Ground I supra in its entirety by reference
as if rewritten herein, petitioner has adequately shown with
clarity that trial counsel's bland stipulation to the factual
basis of the plea was gravely infirm.

## II-E. The Trial Court's Acceptance of the Factual Basis.

The trial court's acceptance of the factual basis of
the plea in this case via counsel's bland stipulation is
infirm.  As discussed above, and herein passim, counsel's
bland stipulation was egregious and ineffective; and the
trial court's failure to reference any documents in the record
as statutorily mandated only exacerbates counsel's
ineffectiveness.  Any contrary reasoning should be rejected.

## II-F. Unreasonable Application of Federal Law.

The clearly established federal law that governs
petitioner's claim of trial court abuse of discretion in
the context of which he alleged, is that of **Hicks v. Oklahoma,
447 U.S. 343, 346 (1980).**  Habeas relief will only lie for

18

violation of a state rule if the alleged violation denie[s]
[a defendant] his due process right to fundamental fairness.
See **Laboa v. Calderon**, **224 F.3d 972 (9th Cir. 2000)** (quoting
**Estelle v. McGuire**, **502 U.S. 62, 72-73**.) A state violates
a criminal defendant's due process right to fundamental
fairness if it arbitrarily deprives the defendant of a state
law entitlement. **Hicks**, at pp. **343, 346.**

In this case, petitioner has colorably shown ante that
he was statutorily entitled to have an adequate factual basis
established before execution of the plea bargain. More
importantly, petitioner has equally shown that by way of
counsel's deficient performance in conjunction with the trial
court's discretional abuse, he was deprived of such state
law entitlement, hence, denied his due process right to
fundamental fairness.

With the state courts presumably aware of the latter,
and likewise, aware of the clearly established federal law
that governs this instant claim, its rejection of the same
resulted in an unreasonable application of the abovesaid
clearly establised (**Hicks**) federal law, and likewise, an
unreasonable determination of the facts in light of the
evidence presented. For these reasons, any contrary reasoning
must fail.

19

## GROUND III-A.

### THE TRIAL COURT'S REJECTION OF PETITIONER'S CLAIM OF CUMULATIVE ERRORS WAS OBJECTIVELY UNREASONABLE.

The state court's rejection of petitioner's claim of cumulative error was based on the purported fact that petitioner failed to show that his trial counsel provided ineffective assistance, and failed to show that the trial court abused its discretion. See Exh. A at p. 5.

As discussed more fully below, the abovesaid reasoning is wrong.

First, incorporating Ground I and II supra by reference as if rewritten herein, it has been well evinced that petitioner both, received ineffective assistance of counsel of a prejudicial magnitude, and likewise, the trial court having abused its discretion of the same magnitude. As such, the abovesaid errors undoubtedly, under cumulation, resulted in a harmful infringement thereupon petitioner's substantial rights.

Next, in **U.S. v. Frederick**, **78 F.3d 1370, 1381 (9th Cir. 1996)**, the court noted and realized [that]: "a balkanized, issue-by-issue harmless error review" is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced against the defendant. **Id**. at p. **1381** (quoting **United States v.- Wallace**, **48 F.2d 1464, 1476 (9th Cir. 1988)**.") In other words, "'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally

20

unfair.'" **Thomas v. Hubbard**, 273 F.3d 1164, 1180 (9th Cir.
**2001).** "In those cases where the government's case is weak,
a defendant is more likely to be prejudiced by the effect
of the cumulative errors." **Frederick**, **supra** at p. **1381.**

In this case, not only was the government's case weak,
but the errors of trial counsel and the trial court, in both,
isolation, and under cumulation, rendered petitioner's court
proceedings fundamentally unfair. Also see **Harris v. Wood**,
**64 F.3d 1438 (9th Cir. 1995).**

### GROUND IV-A.

### THE STATE COURT'S FAILURE TO CONDUCT AN EVIDENTIARY HEARING WAS OBJECTIVELY UNREASONABLE.

Although the state court mentions nothing therein its
reasoned opinion (See Exh. A hereto) in denying petitioner's
habeas petition concerning petitioner's request for an
evidentiary hearing, petitioner avers that its refusal to
do so was error.

Under **AEDPA**, if a petitioner fails to develop in state
court the factual basis for a claim, he is restricted in
his ability to do so in federal court. See **28 U.S.C. § 2254
(e)(2).** However, a federal habeas corpus petitioner is
entitled to an evidentiary hearing where the petitioner
establishes a "colorable" claim for relief and where the
petitioner has never been accorded a state or federal
hearing on his claims. See **Earp v. Oronski**, 431 F.3d 1158,
1167 (9th Cir. 2005) (citing **Townsend v. Sain**, 372 U.S.
293 (1963); **Keeney v. Tamayo-Reyes**, 504 U.S. 1, 5 (1992).)
In showing a colorable claim, a petitioner is "required to

allege specific facts, which, if true, would entitle him
to relief." **Ortiz v. Stewart**, 149 F.3d 923, 934 (9th Cir.
1988). Moreover, the aforesaid restrictions of the **AEDPA**
do not apply if a petitioner exercised due diligence in
state court and attempted to develop the factual basis of
his claim. As the Supreme Court has explained, "a failure
to develop the factual basis of a claim is not established
unless there is a lack of diligence, or some greater fault,
attributable to the prisoner or the prisoner's counsel."
**Williams v. Taylor**, 529 U.S. 420, 432 (2000). The court
further noted that "[d]illigence will require in the usual
case, that the prisoner, at minimum, seek an evidentiary
hearing in state court in the manner prescribed by law."
**Id**. at p. 437. Additionally, to be clear, the court in
**Townsend**, at p. 313, establish[ed] that a defendant is
entitled to an evidentiary hearing if he can show that:

> (1) the merits of the factual dispute were not
> resolved in the state hearing; (2) the state
> factual determination is not fairly supported
> by the record as a whole; (3) the factfinding
> procedure employed by the state court was not
> adequate to afford a full and fair hearing;
> (4) there is a substantial allegation of newly
> discovered evidence; (5) the material facts
> were not adequately developed at the state
> court hearing; or (6) for any reason it appears
> that the state trier of fact did not afford the
> habeas applicant a full and fair hearing. **Ibid**.

If the defendant can establish either of the abovesaid
circumstances, then the state court's decision was based
on an unreasonable determination of the facts and the habeas
(federal) court can independently review the merits of that
decision by conducting an evidentiary hearing. See **Taylor**

**v. Maddox**, 366 F.3d 992, 1001 (9th Cir. 2004) ("if, for
example, a state court makes evidentiary findings without
holding a hearing giving the petitioner an opportunity to
present evidence, such finding clearly results in an
'unreasonable determination' of the facts.")

In this instant case, incorporating Grounds I-III supra
by reference as if rewritten herein, petitioner has clearly
set forth colorable claims for relief, i.e., allegations
of specific facts, which if true, would entitle him to relief.
More notably, petitioner has done all within the ambit of
his power to develop the factual basis for his claims.
Particularly, petitioner has proffered the state court(s)
the factual basis for both, his IAC claims and his claim
of trial court abuse of discretion.  Petitioner likewise,
has attempted to have such claims subjected to an evidentiary
hearing therein the state courts via his habeas petitions
to no avail.

Furthermore, as to petitioner's overall claims presented
herein, he avers that the bulk of the **Townsend** prongs apply
to the particular facts and circumstances of his case, thereby
rendering the state court's failure to conduct an evidentiary
hearing as that of an unreasonable determination of the facts.

Finally, because petitioner's claims presented herein
present mixed questions of law and fact--namely his IAC
claims--and because to date, there has never been an
evidentiary hearing held to resolve such mixed questions
of law and fact, the presumption of correctness clause cannot

23

safely lie in this case. See **Seidal v. Merkle**, **146 F.3d 750**
**(9th Cir. 1998); 28 U.S.C. § 2254 (e)(2).**

Accordingly and in sum, the state court's failure to
conduct an evidentiary hearing as requested by petitioner
was objectively unreasonable warranting any contrary reasoning
to be rejected.

24

## CONCLUSION

For all of the foregoing reasons stated herein and those of the Exhibits hereto, the sought for relief formally requested infra should be granted.

Respectfully submitted,

By: _____
Jose Miguel Avalos
CDCR #T-62425  RA-321L
C.T.F. North Facility
P.O. Box 705
Soledad, Calif. 93960-0705

## VERIFICATION

I, **Jose Miguel Avalos**, hereby declare and affirm under penalty of perjury that all of the foregoing is true and correct, and that I am a party to the instant action, to wit, the petitioner.

Executed on this 3 day of January, 2008.

By: _____
Jose Miguel Avalos
CDCR #T-62425  RA-321L
C.T.F. North Facility
P.O. Box 705
Soledad, Calif. 93960-0705

25

# EXHIBIT "A"

FILED

MAR 23 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COUR
_____ DEPUTY
S. GARSIDE

1    SUPERIOR COURT OF CALIFORNIA

2    COUNTY OF MONTEREY

3

4    In re                                  )    Case No.: HC 5570
                                            )
5        Jose M. Avalos                      )    ORDER
                                            )
6              On Habeas Corpus.             )

7

8    On January 23, 2007, Petitioner Jose M. Avalos filed a petition for writ of habeas corpus.

9    Petitioner is currently incarcerated at the Correctional Training Facility in Soledad.

10   This petition concerns the underlying case of *People v. Jose M. Avalos*, Monterey County

11   Superior Court, Case No. SS020937A. Petitioner entered a plea of no contest to attempted

12   murder and admitted allegations under sections 186.22(b) and 12022.5 with the understanding he

13   would receive a stipulated sentence of 19 years in prison. The trial court, thereafter, sentenced

14   Petitioner to 19 years in prison he stipulated to and imposed a restitution fine of $3,800 and a

15   suspended parole revocation fine of $3,800. Petitioner filed a notice of appeal. On appeal,

16   Petitioner contended that the fines were in excess of the terms of the plea bargain. He requested

17   that the court reduce each fine to the statutory minimum of $200. The People conceded the issue

18   and the appellate court agreed that the concession was appropriate. The appellate court modified

19   the judgment to reduce the restitution and parole revocation fines to $200. As so modified, the

20   judgment was affirmed.

21   In the instant petition, Petitioner makes the following claims: 1) Petitioner's trial counsel,

22   Kevin Hyatt, rendered ineffective assistance; 2) the trial court abused its discretion by failing to

23   ensure that an adequate factual basis for the plea existed; and 3) there was cumulative error.

24   A criminal defendant has a federal and state constitutional right to the effective assistance

25   of counsel. To establish a claim of incompetence of counsel, a defendant must establish both

1

1  that counsel's representation fell below an objective standard of reasonableness and that it is

2  reasonably probable that, but for counsel's error, the result of the proceeding would have been

3  different. *Strickland v. Washington* (1984) 466 U.S. 668, 686-688, 694-695; *People v. Ledesma*

4  (1987) 43 Cal.3d 171, 215-218.

5      In determining whether a defendant, with effective assistance, would not have accepted

6  the offer, pertinent factors to be considered include: whether counsel actually and accurately

7  communicated the offer to the defendant; the advice, if any, given by counsel; the disparity

8  between the terms of the proposed plea bargain and the probable consequences of proceeding to

9  trial, as viewed at the time of the offer; and whether the defendant indicated he or she was

10  amenable to negotiating a plea bargain. In this context, a defendant's self-serving statement--

11  after trial, conviction, and sentence--that with competent advice he would not have accepted a

12  proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as

13  to prejudice, and must be corroborated independently by objective evidence. *In re Alvernaz*

14  (1992) 2 Cal.4th 924, 938.

15      Petitioner claims that his counsel rendered ineffective assistance by miscalculating the

16  maximum penalty he was facing. Petitioner claims that his counsel informed him that he was

17  facing a maximum sentence of 69 years to life. This claim is wrong. According to the Waiver of

18  Rights, Plea of Guilty/No Contest Petitioner signed, he was advised that the maximum possible

19  sentence he could receive was 24 years plus 4 years on parole. (See Waiver of Rights, Plea of

20  Guilty/No Contest.) Moreover, Petitioner has failed to show prejudice. Petitioner has failed to

21  show he was prepared to go to trial. Given the disparity between the terms of the proposed plea

22  bargain and the probable consequences of proceeding to trial, Petitioner's self-serving statement,

23  after the fact, that he would have insisted on going to trial is insufficient to sustain his burden of

24  proof as to prejudice. *Alvernaz*, *supra*, 2 Cal.4th at p. 938.

25

2

1    Petitioner claims that his counsel rendered ineffective assistance by stipulating to the

2  factual basis for the section 186.22(b) allegation. He also claims that his counsel rendered

3  ineffective assistance by failing to ensure that Petitioner participated in the stipulation to the

4  factual basis for the plea. These claims fail. __

5    Petitioner has failed to show his counsel's performance was deficient. Petitioner

6  voluntarily pled nolo contendere to attempted murder and admitted the allegations under sections

7  186.22(b) and 12022.5 pursuant to the plea agreement. (See Waiver of Rights, Plea of Guilty/No

8  Contest.) The court made an inquiry to Petitioner to satisfy itself that the plea was freely and

9  voluntarily made, and that there was a factual basis for such plea. Before entering the plea,

10  Petitioner was advised that on entering a plea of nolo contendere, he would be giving up certain

11  rights. After Petitioner was questioned, the court found that he understood the nature of the

12  charge and the possible range of penalties and other consequences of his plea. Petitioner stated

13  on the record that he had read and understood the acknowledgment of waiver of rights form.

14  Petitioner filled out, initialed and signed a two-page superior court guilty/no contest plea form.

15  The plea contains the following statements: 1) Petitioner understood that he was pleading no

16  contest to the offense of Penal Code sections 664/187; 2) Petitioner understood that he was

17  admitting the enhancements under sections 186.22(b)(1) and 12022.5; 3) Petitioner offered his

18  plea freely and voluntarily and of his own accord and with full understanding of all matters set

19  forth in the Information and in the waiver; 4) Petitioner had personally initialed each box and he

20  understood each right outlined in the plea and he waived and gave up each right in order to enter

21  the plea; and 5) Petitioner was entering a plea of no contest because he was in fact guilty.

22  Petitioner's counsel signed the plea, indicating that he had explained Petitioner's rights and had

23  explained and discussed the facts and possible defenses to the charges, and the possible

24  consequences of the plea. The court found that Petitioner understood and knowingly, voluntarily

25  and intelligently waived his rights, and that there was a factual basis for the plea.

3

1    Moreover, Petitioner has failed to show prejudice. Petitioner has failed to show he was

2  prepared to go to trial. Given the disparity between the terms of the proposed plea bargain and

3  the probable consequences of proceeding to trial, Petitioner's self-serving statement that he

4  would have insisted on going to trial is insufficient to sustain his burden of proof as to prejudice.

5  *Alvernaz*, *supra*, 2 Cal.4th at p. 938.

6    Petitioner claims that his counsel rendered ineffective assistance by failing to investigate

7  his case. Assuming arguendo his counsel's performance was deficient, Petitioner has failed to

8  show prejudice. As discussed above, Petitioner has failed to show he was prepared to go to trial.

9  Given the disparity between the terms of the proposed plea bargain and the probable

10  consequences of proceeding to trial, Petitioner's self-serving statement that he would have

11  insisted on going to trial is insufficient to sustain his burden of proof as to prejudice. *Alvernaz*,

12  *supra*, 2 Cal.4th at p. 938.

13    Petitioner claims that his counsel rendered ineffective assistance by failing to adequately

14  prepare for trial. This claim fails. Petitioner voluntarily chose to enter a plea instead of going to

15  trial. To the extent that this claim relates to Petitioner's other claim that his counsel failed to

16  investigate the case, this claim fails for the same reason.

17    Petitioner claims that his counsel rendered ineffective assistance by failing to advise him

18  of potential defenses. Petitioner fails to identify specifically what defenses existed. Assuming

19  arguendo Petitioner's counsel's performance was deficient, Petitioner has failed to show

20  prejudice. Petitioner has failed to show the defenses, if any, that would have succeeded at trial.

21  Given the disparity between the terms of the proposed plea bargain and the probable

22  consequences of proceeding to trial, Petitioner's self-serving statement that he would have

23  insisted on going to trial is insufficient to sustain his burden of proof as to prejudice. *Alvernaz*,

24  *supra*, 2 Cal.4th at p. 938.

25

4

1    Petitioner claims that the trial court abused its discretion when it failed to ensure that an

2  adequate factual basis for the plea existed. This claim is without merit. As discussed above in

3  detail, the court made an inquiry of Petitioner to satisfy itself that the plea was freely and

4  voluntarily made, and that there was a factual basis for such plea. Petitioner filled out, initialed,

5  and signed a two-page superior court no contest plea form. His counsel stipulated there was a

6  factual basis for the plea. The trial court properly accepted the factual basis for the plea.

7    Petitioner's claim of cumulative error fails. As discussed above, Petitioner has failed to

8  show that his counsel rendered ineffective assistance of counsel. He has also failed to show that

9  the trial court abused its discretion by failing to ensure that an adequate factual basis for the plea

10  existed. Consequently, Petitioner has failed to show there was cumulative error.

11    For the foregoing reasons, the petition is denied.

12    IT IS SO ORDERED.

13  Dated: 3-23-07

14

15                                     Hon. Jonathan R. Price
                                       Judge of the Superior Court
16

17

18

19

20

21

22

23

24

25

5



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

**F I L E D**

Court of Appeal - Sixth App. Dist.

**MAY 1 0 2007**

MICHAEL J. YERLY, Clerk

By _____
                DEPUTY

In re JOSE MIGUEL AVALOS,

on Habeas Corpus.

H031370
(Monterey County
Super. Ct. No. HC5570)

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., and Duffy, J., participated in this decision.)

Dated     **MAY 1 0 2007**          **PREMO, J.**          Acting P.J.

S152952

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re JOSE MIGUEL AVALOS on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

SUPREME COURT
FILED

OCT 1 0 2007

Frederick K. Ohlrich Clerk

_____
Deputy

GEORGE
_____
Chief Justice

# EXHIBIT  "B"

## DECLARATION OF GRACIELA AVALOS

I, **Graciela Avalos**, hereby declare and affirm under pe-
nalty of perjury and the laws of the State of California and
the United States of America as follows:

1. I am a citizen of the United States of America and a
resident of the State of California currently residing in Sa-
linas California in the County of Monterey. I am over the
age of 18 years and competent to testify as follows:

2. I am the mother of Jose Miguel Avalos. In February
of 2002, when I learned that Jose had been arrested for shoot-
ing someone and that the shooting was gang related, I found
it quite difficult to believe.

3. Jose has never been into any criminal activities or
gangs. He had never been in trouble with the law and he has
always been a good child and never really gave me any signi-
ficant "problems" of any sort. I have always had him "into
church" and he is genuinely a God fearing person.

4. Upon my invoking/hiring the services of the Chase Law
Group, specifically attorney Kevin Hyatt, I was told/advised
by another attorney who appeared to be an associate/represen-
tative of Mr. Hyatt, to wit, Steve (Davidson), that if "I
really loved my son, I had to pay Fifteen Thousand Dollars
($15,000.00) to Mr. Hyatt in two payments in order to initi-
ate Jose's case. I was also told by "Steve" that per the
abovesaid payment(s), Jose's case would be defended "100%."

5. I ultimately paid the abovesaid fee specifically for
the services of Mr. Hyatt. Despite so, Mr. Hyatt only showed

up to Jose's court dates approximately three times, i.e., at
the stage of Jose's sentencing and approximately twice prior
to such sentencing.

6. Another attorney named "Matthew", who apparently was
also "from" the Chase Law Group, appeared at Jose's court
dates on Mr. Hyatt's behalf far more than Mr. Hyatt himself
(or anyone else attorney-wise.) "Steve" appeared at Jose's
court dates periodically, but not as often as did Matthew. I
never hired Matthew or Steve.

7. I was also informed by Jose that Mr. Hyatt's first
"contact" with him (therein the jail) was for approximately
ten minutes only, where Mr. Hyatt merely outlined all of the
"evidence against" Jose. Jose further informed me that all
other subsequent visits he received from Mr. Hyatt were for
less than three minutes each and soley based on Mr. Hyatt
attempting to persuade Jose to accept a 21 year prison deal
for attempted murder, a gun-charge, and a gang charge.

8. Jose further informed me that at each of the above-
said vists, his attempts to tell Mr. Hyatt his side of the
story were thwarted by Mr. Hyatt shunning him and telling him
that he was facing life in prison and that there was "no sto-
ry" that could save him. Jose further informed me that Mr.
Hyatt never at anytime discussed the "ins and outs" of his
case or any parts of the case in any fashion. Mr. Hyatt
based each of his visits on trying to persuade him (Jose) to
accept the 21 years and never discussed a defense(s) or any
other options besides the 21 year deal.

9. Jose further informed me that each time that he re-

2

fused to accept the deal, Mr. Hyatt would get angry and just leave the visit in the middle of he and Jose's conversation in a rude manner.

10. Highly concerned and alarmed with all of the above, I immediately contacted Mr. Hyatt to confront him with that which Jose relayed to me as outlined above. Mr. Hyatt told me that Jose could not win. I asked Mr. Hyatt what was the evidence that "they" (the prosecution/D.A.) had against him and he informed me that Jose had "confessed to everything" on videotape.

11. Mr. Hyatt said that Jose admitted guilt to specifically attempting to murder someone for the benefit of a gang. I told Mr. Hyatt that not only did I not believe that, but that Jose unequivocally had denied being responsible for the crime--especially in the manner ot which it had been alleged, i.e., for the benefit of a gang. I asked Mr. Hyatt to show me the videotape. He told me that I would be able to see it after the trial or after the case was "over."

12. I also asked Mr. Hyatt did he investigate to find out if the so call "confession" was based on police pressure or based on Jose having been under the influence of drugs. He told me that it was no need to "investigate that" because "it didn't matter" simply because the D.A. would simply "get around that."

13. I asked Mr. Hyatt had he did any other investigation into the case and he said there was "nothing to investigate." I asked Mr. Hyatt how could "they" convict Jose for the gang charge when Jose is clearly not a gang member or associate,

3

or a criminal. Mr. Hyatt said that the fact that the victim
was a gang member, the fact that the victim was hispanic as
is Jose, and the fact that Jose has a tatoo that reads: "My
Crazy Life" was enough for the "D.A." to use to convict him
and that a jury would have no problem convicting Jose based
on the above.

14. I told Mr. Hyatt that there were many people/family
and friends (witnesses) including our family pastor, Alejandro
F. Musumeci, who were more than willing to come forward on
Jose's behalf to provide credible testimony that he is not a
gang member or even a part time associate and that he is not
a "bad person" at all. Mr. Hyatt said that he would try to
contact "these people" and our family pastor, but that it quite
likely would "do no good" because Jose had purportedly confe-
ssed to "everything" and that the victim had purportedly died.

15. I also asked Mr. Hyatt had he made any efforts to pre-
pare Jose to talk to/address the court/judge. Mr. Hyatt said
that it was "no need for that" and that it would probably do no
good any way.

16. Mr. Hyatt's overall attitude subsequent to my hiring
him had dramatically changed for the worse. He'd become very
rude, evasive and unforthcoming and even told me that the D.A.
was "getting tired of this case dragging on" and that if Jose
continued to refuse to accept the 21 year deal that she (the
D.A.) would make sure that he received life in prison.

17. Mr. Hyatt further informed me that Jose had repeated
ly told him that "God would take care of everything" and that

4

"someone" needs to tell Jose that such "religious attitude" should not be relied upon because it is not going to prevent him from getting life in prison if he doesn't take the 21 year deal....and this is no time to be "religious."

18. Upon making physical contact with Mr. Hyatt at one point, he informed me that he had attempted to contact my pastor on several occasions but that he had great difficulty "catching up" with him. I informed Mr. Hyatt that my pastor is virtually always in his office and I even called him via my cellphone in the presence of Mr. Hyatt and made contact with my pastor immediately where I then handed my phone to Mr. Hyatt so that he could converse with my pastor.

19. Mr. Hyatt "suspiciously" walked away from my immediate presence with my phone while talking to my pastor out of my hearing range in a secretive manner and returned approximately five minutes later and returned my phone. He said that he would be contacting my pastor again soon, but said nothing more.

20. I spoke with Jose further and he informed me that "Steve" had also been attempting to persuade him to take the 21 year deal upon his visiting Jose therein the Jail.

21. I spoke with my pastor after Mr. Hyatt's phone contact with him as outlined above where my pastor informed me that Mr. Hyatt had contacted him one time and informed him that the victim had died and that he (my pastor) was going to advise Jose to accept the 21 year deal so that he would not get life. My pastor said that he fully supported Jose's stance of putting it "all in God's Hands" but that due to the fact that the

5

victim had now died, it would be best that he accept the 21

year deal and "keep the faith" amid doing so--even though

Jose is not a gang-member/associate and even though there·

was no evidence to support the gang charge.

    22. My pastor also informed me that Mr. Hyatt had ask-

ed him to try to "talk some sense" into Jose about taking

the deal and to also try to "talk to me" about persuading

Jose to take the deal in that Jose and I both were very re-

luctant to have him plead to a (gang) charge that he is not

guilty of--especially in light of the fact that Mr. Hyatt

had not discussed or investigated Jose's "side of the sto-

ry."

    23. My pastor said that Mr. Hyatt told him that if Jose

did not take the deal, not only would he get 25 years to life

in prison at trial, but it would be a total waste of the $15,

000.00 that I paid him.

    24. Because of all of the above, Jose was ultimately

persuaded to take the deal.  Jose informed me that he had

written letters to the judge and the D.A. to inform them

from his heart that he was not a gang member and that the

shooting was not related to any gang whatsoever.  He also

said that he included several bible verses therein such le-

tters.

    25. The deal was ultimately set at 19 years there at

a formal court hearing in the latter part of May of 2002.

Jose was formally sentenced on June 27, 2002.  Between the·

latter part of May, 2002, and Jose's June 27, 2002 senten-

cing date, Mr. Hyatt allowed me to view the videotape of

6

Jose's so call confession. Upon my view of the video, I no-
ticed that Jose never actually confessed to attempting to kill
anyone and that he repeatedly denied that the shooting was re-
lated to gangs.

26. I also heard from several people during the latter
said time that not only had the victim "not died", but that
he was never subjected to life threatening injuries as a re-
sult of the shooting.

27. I immediately attempted to contact Mr. Hyatt concern-
ing the fact about the victim (possibly) still being alive--
only to encounter great difficultiy in contacting him.  I fi-
nally made contact with him on the phone where he told me
that he would discuss the matter with me in person because
at the time he was "very busy".

28. I contacted Mr. Hyatt again telephonically to in-
form him that I wanted to definitely attend Jose's sentencing
hearing.  He informed me that Jose's sentencing was scheduled
for June 27, 2002 at 10:00 a.m.

29. As a precaution, I sought the temporary assistance of
a local attorney, Eugenio Martinez to look into my son's case
before he was formally sentenced.  A female representative of
Mr. Martinez accompanied me on his behalf to Jose's sentencing
whereupon she and I showing up at the courtroom approximately
15 minutes to 10 a.m. (to halt the proceedings) we were told
that Jose had already been sentenced at "8:30 a.m." that mor-
ning--blatantly contrary to the time Mr. Hyatt informed me.

30. I finally made contact with Mr. Hyatt after Jose
was sentenced to confront him with his "deception",  He again

7

informed me that we would meet "in person" and discuss
"everything" formally. I also asked him for a copy of the
video tape of Jose's so call confession. He told me that
he would make a copy for me and send me the videotape and
all of Jose's paperwork.

31. Mr. Hyatt and I never did meet in person as he
assured me above. He would not return my calls. He was very
evasive.  To date, Mr. Hyatt and I never met in person as
discussed above. He never did send me a copy of the video-
tape.  It was nearly two years after Jose was sentenced that
Mr. Hyatt finally sent me Jose's court papers. He told me
that the video tape got lost and could not be located..

32. After Jose's appeal was concluded, I hired another
attorney, Michael Y. Alvarez, to represent Jose on habeas
corpus.  Mr. Alvarez informed me that Mr. Hyatt had indeed
done a very poor job in representing Jose and that because
so, Jose had a great chance at prevailing on habeas corpus.

33. Mr. Alvarez informed me that Jose's case involved
extensive research and investigation, but that he indeed
would effectuate a habeas petition on Jose's behalf provid-
ing I paid him his requested fee. I paid Mr. Alvarez and
he purported to commence an investigation for Jose.

34. Despite my having hired Mr. Alvarez in early 2004,
his investigation seemed to never have ended. He did write
to Jose and even visited him once, but he was always very
difficult for me to contact. He would not return my calls
for weeks at a time. So was the same for his secretary(s).

35. In March, 2006, I learned that Mr. Alvarez had

8

pleaded guilty to felony theft where he was to serve a year
in jail--all of which stemmed from his having defrauded se-
veral of his clients out of hundreds of thousands of dollars
over a period of seven years.

36. I attempted to contact Mr. Alvarez immediately after
learning of such news only to encounter great difficulty.  I
finally managed to make telephonic contact with Mr. Alvarez
(once) where he assured me that despite his conviction, he
would still be able to properly effecutate Jose's habeas
corpus.  It never happened.  When it did not happen, I
attempted to retrieve Jose's paperwork from Mr. Alvarez/his
office--all to no avail.  His fellow partners were equally
of no help.  His secretary(s) never returned any of my calls.

37. In mid-2006 I learned via a local newspaper that Mr.
Alvarez had become a fugitive in not having turned himself
in to serve his sentence of one year in jail.  I immediately
became highly alarmed and attempted to make contact with him
to retrieve all of Jose's records--of which  Jose and I had
sent to him "our only copies".  However, I was unable to con-
tact Mr. Alvarez and the staff there at his office were also
of no help.

38. I finally was able to locate a "limited portion" of
Jose's records wherewhich upon doing so, I then immediatley
forwarded such documents to Jose so that he could commense to
"work" on his own case in hopes of salvaging all of the "da-
mage" thus far.

39. Jose informed me that he too, attempted to contact
Mr. Alvarez via a plethora of letter and phone attempts--all

9

to no avail.   To date, I have not heard from Mr. Alvarez.

40. I, **Graciela Avalos**, hereby declare and affirm on this __28__ day of __DECEMBER__, 2006 that all of the foregoing is true and correct to the best of my knowledge.

Graciela Avalós
D E C L A R A N T

10

# EXHIBIT   "C"

JOSE M. AVALOS
CDC #T-62425  RA-321L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD CALIF. 93960-0705

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF MONTEREY

SALINAS DIVISION

JOSE M. AVALOS,                    )    Habeas Corpus Case N._____
                                   )    Super. Ct. Case No. SS020937A
              Petitioner,          )
                                   )    DECLARATION OF JOSE M. AVALOS,
-vs-                               )    PETITIONER
                                   )
BEN CURRY, WARDEN,                 )
                                   )
              Respondent.          )
                                   )
_____)

I, Jose M. Avalos, hereby declare and affirm under penalty
of perjury and the laws of the State of California and the Uni-
ted States of America as follows:

1. I am a citizen of the United States of America and a
resident of the State of California, currently incarcerated in
a California penal facility, to wit, the Correctional Training
Facility (C.T.F.). I am over the age of 18 years and compe-
tent to testify as follows:

2. Following my February, 2002 arrest for various crimes
resulting from a shooting that occured in February of 2002, in
Salinas California, and during my detainment therein the local
jail, I was contacted by a Mr. Kevin Hyatt, an attorney my mo-
ther hired/retained to represent me for such crimes (pursuant
to the above captioned Superior Court case number.)

3. Upon my initial contact with Mr. Hyatt and virtually

all subsequent contacts with him, I immediately and consistent-
ly thereon forward, informed Mr. Hyatt (because I was charged
with having committed the shooting for a gang) that I was/am
not a gang member, nor an associate of "any" gang--even on a
part time basis--and that by no means was the shooting gang
related.

4. Mr. Hyatt appeared to concede with me concerning the
gang issue--citing that "it appeared that there was no evi-
dence that I was a gang member or that the shooting was gang
related."

5. Mr. Hyatt ultimately contacted me on several more oc-
casions where he informed me that a "21 year plead deal" had
been offered to me by the prosecution and that if I accepted
such deal that the assault charge and a gang and gun allega-
tion would be dismissed.

6. Because the abovesaid deal consisted of my admitting
that the shooting was for the benefit of a gang, I immediately
expressed vehement opposition to the "deal" because such alle-
gation was simply not true.

7. Mr. Hyatt informed me that "regardless of 'what'", the
21 year deal was a very "good deal" because I was facing 69
years to life if I went to trial on all of the charges and 25
to life for just the attempted murder alone. He informed me
that I was facing 10 years for each of the gun/gang allega-
tions and 4 years for the assault charge consecutive to 25
years to life for the attempted murder.

8. I soon received some advice from several fellow in-
mates held therein the jail with me who told me that my lawyer

2

was not providing me with the correct information concerning the amount of time I was facing for the crimes I was charged with.

9. Although I was not able to provide Mr. Hyatt with any concrete facts, I nonetheless expressed to him that I felt that he was not telling me the correct information as a whole. He responded by saying: "who are you going to believe, some 'jailhouse lawyers' who are in no better position than you, or your lawyer, who knows what he's doing." He also told me that I needed to talk to my family and my pastor because he had already talked to them and explained the situation.

10. Mr. Hyatt said that maybe "they" (my family/pastor) can get me to "see the light" because 21 years is a whole lot better than life in prison--even if it meant that I was pleading to the (gang allegation) (something I didn't do.)

11. He also told me that the fact that I had a tatoo that read "My Crazy Life" and that the victim was a gang member, that the D.A. would "chew me up" with these two factors in front of a jury and that I was guaranteed to lose at trial as to the gang allegations and all of the charges.

12. I was still very reluctant to accept blame for the gang allegation. Finally, my pastor contacted me and nearly begged and pleaded with me to accept the 21 year deal because he did not want to see me get "life in prison." My pastor told me that he could not believe that the D.A. could prove the gang allegation but that because my lawyer told him that it was nothing he could do, that I should take the 21 years. My pastor said that Mr. Hyatt said that he contacted him to

3

specifically talk to me to persuade me to take the deal.

13. My pastor (Alejandro Mucumeci) also contacted my parents/family to try to persuade them on Mr. Hyatts behalf to talk to me to take the 21 year deal. My mother and fathaer visited with me there at the jail and told me that I should take the deal to keep from getting life in prison.

14. Never at any time did I tell jail officials that I was a gang member or that I "desired to be housed with 'surenos' or any gangs." At most, I predominately associated with non-affiliate "Mexican Nationals" (natives of Mexico)-- all of whom were not associated with gangs.

15. Mr. Hyatt never at any time informed me that I would have to register as a gang member.

16. Upon my mother hiring/retaining Mr. Alvarez to represent me on habeas corpus, I began receiving a series of letters from him indicating that he was engaged in an investigation on my behalf for habeas corpus purposes. Mr. Alvarez came to visit me at least once while I was at Pelican Bay State Prison.

17. I ultimately forwarded virtually all of my records/ documents pursuant to my case to Mr. Alvarez per his request. Although Mr. Alvarez claimed to have been engaged in extensive investigation, never at any time was a habeas petition effectuated on my behalf. The last time that I personally heard from Mr. Alvarez was September of 2005.

18. From September, 2005 until approximately March of 2006, I attempted to contact Mr. Alvarez both via telephone and "letterwise" all to no avail. It was in Mid March of 2006 that

4

I learned from my mother that Mr. Alvarez had been convicted
(pleaded guilty) of felony theft directly related to his po-
sition as a lawyer.

19. I immediately began attempting to contact him before
he had to go serve his time in an effort to find out about
the disposition of my habeas corpus litigation as well as to
retrieve all of my documents back from him in the event that
I would have to either effectuate a habeas action myself, or
seek assistance in doing so elsewhere.

20. However, I never received a response from Mr. Alvarez
nor from his associates there at his law firm.

21. At one time, my mother managed to finally make con-
tact with Mr. Alvarez who informed her that despite his con-
viction and imminent sentence, he nonetheless had the habeas
action "under control". Yet, never was a habeas action filed.

22. Soon thereafter, my mother informed me that she had
learned via a local newspaper that Mr. Alvarez had fled from
law enforcement (became a fugitive) by not turning himself
in to began serving his sentence of one year in jail.

23. After learning of such, I immediately attempted to
contact Mr. Alvarez's fellow associates at his law firm in an
effort to retrieve all of my documents of which I initially
forwarded to Mr. Alvarez. However, never did I recieve a re-
sponse from any of his staff to date.

24. My mother encountered the same problems. Finally, my
mother managed to locate a limited portion of my records to
send to me so that I could began to effectuate a habeas corpus
action. Because she was not authorized to send me such re-

5

cords under the auspice of "legal mail", it took over a full month for me to recieve such records in that mail here at my current place of incarceration is over one month behind.

25. After finally receiving my documents in December of 2006, I immediately set out to effectuate a habeas action with the help of fellow inmates.

26. I, **Jose M. Avalos**, hereby declare and affirm on this 30 day of December, 2006, that all of the foregoing is true and correct.

Jose M. Avalos
D E C L A R A N T/Petitioner

6

Clinical & Forensic Psychology
CA License PSY 5575

THOMAS J. REIDY, Ph. D., A.B.P.P.

*Diplomate in Forensic Psychology*
*American Board of Professional Psychology*

The Sargent House
154 Central Avenue
Salinas, California 93901
831/757-6673

May 17, 2002

## PSYCHOLOGICAL EVALUATION

NAME:                          Jose Avalos

AGE:                           19 (DOB: 7-20-82)

CASE NUMBER:                   MS020937A

DATE OF EVALUATION:            May 17, 2002

REFERRAL SOURCE:               The Honorable Terrance Duncan
                               Superior Court of Monterey County

REASON FOR REFERRAL:           Competency to Stand Trial pursuant to 1368 P.C.

RECORDS REVIEWED:

- Monterey County Superior Court Minute Order
- Salinas PD reports and property record

### INFORMED CONSENT:

The defendant was informed about the nature and purpose of the examination and that a report would be prepared for the Court with copies going to the District Attorney and Defense Counsel. He expressed an understanding that the interview was not confidential and agreed to proceed.

### CURRENT CHARGES:

1. Attempted Murder, Street Terrorism, Use of a Firearm in Commission of a Felony
2. Assault with a Firearm on a Person, Street Terrorism, Use of a Firearm in Commission of a Felony

## BRIEF SOCIAL HISTORY:

The defendant lives in Salinas with his parents and other family members. He came to the U.S. from Mexico at about age 18 months. Father operates a taxi company and mother works for McCormick Schillings. During high school the defendant was expelled from Alvarez High because of excessive "arguments" with other students but he denied fighting or disrespect to teachers. After enrolling at No. Monterey County High, he left after a year because of fighting that he claimed was self-defense. Thereafter, he attended Baptist Temple School briefly before enrolling at Hartnell College where he reportedly completed two years worth of classes. He has worked for the last several years at different places in the auto body repair business. He denied ever being married, but has had girlfriends. He denied being in a gang yet stated he associates with Paison-Mexico, which is a group that is neither Norteno nor Sureno.

The defendant denied having any prior psychiatric history. He reported no prior arrest record. However, he has been cited for driving on a suspended license following traffic stops that revealed he had no insurance.

Alcohol abuse was denied. However, he admitted to smoking methamphetamine almost daily for the last seven months. All other drug use was denied.

## MENTAL STATUS:

The defendant appeared as a well-groomed individual. Acne was readily apparent on his face. He was completely oriented and responded to most questions in a very polite, calm and rational manner. His rate of speech was not rapid or pressured. Speech and thinking patterns were generally organized and coherent. Reasoning and judgment were intact but his ability to handle abstract concepts was marginal. This may have been a result of some language issues as Spanish is his primary language. Nevertheless, he is certainly capable of comprehending basic concepts and of learning.

He denied experiencing any symptoms of mental illness, including hallucinations, psychosis and mood disturbance, either in the past or at the present time. No hallucinations were obvious and he denied delusions, odd beliefs or any other symptoms of mental illness. As far as the defendant was concerned, he did not consider himself to be mentally ill. Indeed, no symptoms of a mental disorder were apparent from the history, self-report or observed behavior.

## COMPETENCY EVALUATION RESULTS:

I administered the MacArthur Competence Assessment Tool - Criminal Adjudication to assess the defendant's competence related abilities. This measure addresses understanding (ability to understand general information related to the law and legal proceedings), reasoning (ability to discern legal relevance of information, and capacity to reason about specific choices that arise legal proceedings), and appreciation (rational awareness of how legal factors and issues might be applied in the context of the defendant's case). In each of these modalities tested he showed minimal to no impairment. When the defendant made an

error or marginal response and had information provided that would enhance his understanding, he was able to learn and give a satisfactory reply incorporating what he had been told.

When asked about the charges the defendant readily expressed an understanding that he is facing attempted murder charges and also mentioned possession of a controlled substance and driving on a suspended license. He had no knowledge of the charges involving Street Terrorism or use of a Firearm in Commission of a Felony. When these were explained, he understood. He was aware the consequences if found guilty at trial would be "twenty five to life". He readily repeated his knowledge that the prosecutor had offered a deal for him to receive a sentence of 21 years and that he would only serve 18 years. However, he stated that he intends to plead not guilty because he lied to police about his guilt fearing that the real shooter, "Nigger", would harm his family if the defendant revealed the information.

This defendant quite clearly understands the judicial system, the role of the participants, evidence and witnesses. He understood the nature of a plea bargain and would not accept any offers, claiming that he is innocent. He displayed a satisfactory appreciation of the meaning and consequences of the proceedings involving his own case. He was quite aware of the fact that he is potentially facing a long prison term. He is certainly capable of some abstract reasoning but comes across as naive and rather simplistic in his thinking.

### OPINIONS:

This defendant is lucid and shows no signs of mental disorder. He has a satisfactory understanding of his case, court procedures, his rights and consequences of different outcomes. He can certainly communicate his thoughts and beliefs in a clear and coherent manner sufficient to adequately assist his attorney in preparing a defense.

### CONCLUSION:

I believe that Mr. Avalos is **Competent to Stand Trial** pursuant to 1368 P.C.

Sincerely

Thomas J. Reidy, Ph.D., A.B.P.P.
Diplomate in Forensic Psychology
American Board of Professional Psychology

# EXHIBIT "D"

000015



SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF MONTEREY

PEOPLE OF THE STATE OF CALIFORNIA,

          Plaintiff,

    vs.

JOSE MIGUEL AVALOS
          Defendant.

CASE NO. MSO20937A  G2021244

WAIVER OF RIGHTS
PLEA OF GUILTY/NO CONTEST

Defendant to Initial Below

1.    My full true name is _JOSE MIGUEL AVALOS._     J.A.

2.    I understand that:

    (a) I am pleading Guilty/No Contest to the offense(s)
    of: _664/187 PC_

    (b) I am admitting the following enhancements and/or priors:
    _186.22(B)(1) PC , 12022.5 PC_     J.A.

3.    I understand that the maximum possible sentence I could
    receive for the offense(s) is _24 yrs_
    plus four (4) years on parole.     J.A.

4.    I understand that I have an absolute right to:    I understand and
        give up this right.

    (a)  A speedy and public trial by jury;    J.A.

    (b)  Confront the witnesses against me:    J.A.
          to see, hear, and have my attorney question
          all witnesses called to testify against me;

    (c)  The processes of the Court to compel the    J.A.
          attendance of witnesses on my behalf;

    (d)  Present evidence on my behalf;    J.A.

    (e)  The privilege against self-incrimination.    J.A.

          J.A.

5.    I understand that if I am granted felony probation that
    I may receive up to one year in county jail, plus fines,
    that I may be required to pay restitution to the victim(s),
    to register as a sex or drug offender, if applicable, to
    submit to narcotics and or alcohol tests, to submit to
    search of my person, car personal effects, or place of
    residence, night or day, without the necessity of a search
    warrant, and any other conditions of probation deemed
    reasonable by the Court.  I understand that if I violate
    any term or condition of my probation, I can be sent to
    state prison for the maximum term allowed by law as noted
    above, and that I will be ordered to pay a restitution fine
    of not less than $200 nor more than $10,000.

6.    I have discussed the charge(s), the facts, the possible    J.A.
    defenses, and the consequences of my plea with my attorney.

000016

WAIVER OF RIGHTS
PLEA OF GUILTY/NO CONTEST

7.    I offer my plea of "Guilty"/"No Contest" freely and voluntarily          *J.A.*
      and of my own accord and with full understanding of all matters
      set forth in the Information and in this waiver.

8.    I understand that if I am not a citizen of the United States            *J.A.*
      a plea of "Guilty"/"No Contest" could result in deportation,
      exclusion from admission to this country, and/or denial of
      naturalization.

9.    I have personally initialed each of the above boxes and I              *J.A.*
      understand each and every one of the rights outlined above
      and I hereby waive and give up each of these in order to
      enter my "Guilty"/"No Contest" plea(s).  I am entering a plea
      of "Guilty"/"No Contest" because I am in fact guilty.

      Dated: _5-28-02_        Signed: _Jose Avalos_
                                              Defendant
                        Date of Birth: _2-20-82_


                        ATTORNEY'S STATEMENT

      I am the attorney of record and I have explained each of the above rights to the
defendant, and have explained and discussed the facts and possible defenses to the
charge(s), and the possible consequences of a plea of guilty or no contest.  I concur
in defendant's decision to waive the above rights and to enter a plea of "Guilty"/"No
Contest."   I have witnessed the reading of this form by the defendant and his/her
initialing and signature upon it.

      Dated: _5/28/02_        Signed: _K Hyatt_
                                        Attorney for Defendant


                        INTERPRETER'S STATEMENT

      I, the interpreter in this proceeding, having been duly sworn, truly translated
this form and all questions therein to the defendant in the              l a n g u a g e .
The defendant indicated understanding of the contents of the form and then initialed
and signed the form.

      Dated: _____        Signed: _____
                                              Court Interpreter


                        COURT'S FINDING AND ORDER

      The Court, having questioned the defendant concerning the defendant's
constitutional rights, finds that the defendant understands these rights and has
voluntarily and intelligently waived these constitutional rights.  The Court finds that
the defendant's plea(s) and admission(s) are freely and voluntarily made, that the
defendant understands the nature of the charges and the consequences of the plea(s)
and that there is a factual basis for the plea(s).  The Court accepts the defendant's
plea(s), and the defendant is hereby convicted on the plea(s).

      Dated: _5-28-02_        Signed: _____
                                        Judge of the Superior Court

PROBATION OFFICER'S REPORT.................................................FILED 06-19-02

# EXHIBIT "E"

6/1/02

**000029**

To Whom It May Concern:

First, I should like to introduce myself. I am Mrs. Rosemarie S. Holewinski, a neighbor of Graciela and Jose Avalos. I am a retired high school teacher. I have know the Avalos family for several years now.    I had spoken with Jose over the year or so that he had been living next door and always found him to be polite and in fact very helpful to my husband and myself. We, in turn, helped whenever we could. Jose told me that he wanted an education and had hopes of attending UC Santa Cruz.  I commended his attitude and told him to keep up with his studies. We discussed it and I realized that his language skills were weak. I then queried Jose about the classes that he was taking in school. I discovered that he was not taking classes that would lead to a college admission upon graduation from high school. I explained this to Jose and told him that he should see his school Counselor about this as soon as possible. It is my understanding that he left school after turning 19 without a high school diploma. As you well know, this is a huge handicap to any further education that he wanted and to the ability to get a meaningful job.

This has led me to believe that he may have some learning disability. I base this strictly on my 30 years of teaching in an all boy's school from 7th grade to 12th. I taught English and some remedial reading classes. I do recognize learning problems but I do not propose that I am an expert.

I give this as a brief background in order to explain to you how upset I was about the failure of the school district to help this boy. Jose comes from a wonderful family. They are hard-working and deligent. Their only lack is the ability to be proficient in English. This precludes them from clearly understanding much of what happened with Jose and how to effectively communicate with the School District.

If Jose did this terrible thing, then surely, he must be punished. But you must understand that many unfortunate circumstances led up to this that could have been avoided if he had had the proper quidance and his family had a semblance of consideration from the school district. I was the only person they could turn to and I, at best, was not adequate because I did not have direct access to the public school administration standings. I did the best that I could, but all involved must admit that the professional adults in his life failed Jose. He really needs learning ability testing which he did not get when he was in school. To me, I can understand the frustration and lack of self esteem that Jose has felt because of this failure. You too, who are educated, must understand somewhat how he feels. He had great dreams that he could not realize. This was not his fault if he couldn't get the guidance and help our school system is suppoedly set up to give. I and my husband have never known Jose to be violent or contentious. I have seen Jose with his two nephews, sons of his sister, who also live in the family home and seen his patience and sincere love that he has for these two little boys--taking gentle care of them when he is with them. These are not the actions of a violent , combative person.

000030

I request that his sentencing be such that he can stay here in contact with his loving family and be helped to prepare for his GED in order to get and be able to hold a good job when he is released. There are few families as as industrious , hardworking and honest as the Avalos family. This has been a tragedy for them. They are willing and able, I am sure to cooperate in any way that they can  to help their son, Jose who is  basically  a decent person  who deserves a chance  to prove that he can be a productive good citizen.

Respectfully yours,


Mrs. Rosemarie S. Holewinski
1186 Polk Street
Salinas, Ca 93906

831-449-6506



# IGLESIA DE CRISTO
## MI-EL
MINISTERIOS ELIM
### SALINAS

June 24, 2002

To Whom It May Concern:

By means of this letter we make it known that we know Jose Miguel Avalos Jr. since 1993, which is the son of Jose Avalos and Graciela Avalos. Jose has demonstrate good conduct and to be a pacific and friendly person. Who has been involved in Christian groups keeping good fellowship along with his parents.. To whom affairs it interests and convenes we extend this letter.

P.S.
If you would have any questions
do not hesitate to call us at (831)754-1937 or
(831)784-1406

Attentively,
Pastor Jaime Cruz
Iglesia de Cristo Ministerios Elim Salinas

621 E. Alisal st. Salinas CA 93905

000032

# UNIDAD DE FE Y AMOR MINISTRIES

298 E. Market
P.O. Box 875
Salinas, CA 93902
(831) 753-1840

June 25, 2002

Dear Sir or Madam:

We are writing this letter to inform you that Jose Avalos, Jr attended our church in Salinas, California, on a regular basis. He was involved in many projects within the church. He painted the church van, attended music classes and helped in the construction of our new building. He was an active member in the youth group up to a year ago, before he moved to Bakersfield for a short period of time.

His family has been attending our church for more than two years. If you have any questions, please call me at the above phone number.

Sincerely,

Alejandro F. Musumeci

Pastor

000033

## Carlos Auto Body

225 Harrison Road
Salinas, CA. 93906

June 26, 2002

To Whom It May Concern:

I Carlos Alvarado have known Jose Miguel Avalos for about two years. My overall relationship with Jose Miguel Avalos has been very good, we worked together in a body shop and I was teaching him the necessary principles of automobile mechanic. I personally do not have any complaints of Jose Miguel Avalos; he has always demonstrated great interest and enthusiasm in his work in the body shop. In my own opinion Jose Miguel Avalos has always been a very respectful person who has never caused any trouble.

Please feel free to contact me if you need further information at (831) 443-6452

Sincerely,    Carlos alvarado

Carlos Alvarado

000034

To whom it may concern . . . .

I'm writing in behalf of Jose Alvarado. That these concerning "accurazations" in my opinion and point of view to be false. Jose is a quiet, helpful, and hard working individual. It's impossible for me to believe, Jose to have taken part in such a crime.

I spoke to both Jose's mother and father. They lead me to believe that Jose at the time was mainly concerned with the safety of his family. Jose appeared 3-4 times weekly to help around the shop, and learning the trade by working on his own personal vehical.

Jose onced shared that his dream was to one day have and own his own Body Shop. I'em a Salinas local bussiness-owner. Own and operate:

Carlos Auto Body & Repair
225 Harrison road
Salinas, California  93907

My goal in this letter is to highlight and point out although the bad situation Jose finds himself in. He is a good hard working and reliable individual. I believe it should be taken into consideration, due to the missing facts, that are not being exposed for the safety of his family.

owner Manuel Torres
of Carlos Auto Body & Repair

Maria Gutierrez
597 Leslie Dr., Apt #E
Salinas, CA 93906
(831) 442-8319
06/10/02

To Whom It May Concern:

This letter is to inform you that I have known Jose Avalos for several years.

I met Jose and his parents at the christian church that we attend. He
always accompanied his parents to church. Jose is honest and a
humble young man and he comes from a very good family.
Jose loves his parents very much and I never saw him in trouble.

Sincerally,

Maria Gutierrez

000036

Mount Toro High School
10 Sherwood place
Salinas, Ca. 93006

To whom it may concern;

I would like to take this opportunity to write this letter on behalf of
Jose Avalos Jr.
In 1997 I meet the Avalos family, at that time I was working at
Everett Alvarez High.

In my job as a Community Liaison, I have the opportunity to
monitor student progress in the academics and behavior areas at
the same time I also work closely with their parents.
The main goal is for the student to graduate and achieve goals and
look forward to a secondary education and learn life skills.

Since I started working with Jose, he really showed respect and
care. He was always polite not only with me but also with other
school staff.

Please feel free to contact me at (831) 422-0638 if any questions.

Respectfully,

Sandra Cervantes

Manuel Gallegos chavez!

El propossito de este papel es acerca de algunas referencias sobro Joce.

Por mi parte fueron muchos dias los que estuvimos jontos travajando en el misma lugar, ahi lo conosi mas afondo un muchecho muy travajador responsable siembre estava alcorriente del travajo que se le asignava.

Respecto a mi encluso algunos dias estuve dandome raite al travajo, pasavan los dias y empesavamos a conocernos mejor, hubo unos dias en que el travajo empeso a escadiarse, y el tuvo que rretirarse a vuscar en otra parte, y creo que si lo consiguio. Transcurso del tiempo rregreso con un carro y decidio arreglarlo en el taller, empeso a travajar en el asta que lo acavo.

De mi parte nunca me di cuenta que anduviera en algo malo o que anduvia con personas con mal rrecord s siempre en un vuen termino el platicando del futuro que le ya que pronto su novia tendria un hijo de el y creo que entre sus planes era ya pronto casarce.

Pasaron los dias y algunas veces nos visitava despues de ahi no emos sabido mas asta ahora que creo que esta en un grave problema.

Esperamos que este papel sirva de algo ya que esto Joce es una buena persona en un vuen termino

Mi Nombre.
Manuel Gallegos chavez

1   DECLARATION OF SERVICE BY MAIL

2

3   CASE NAME: _____Avalos v. Curry (Habeas Corpus)_____

4   CASE NO.: ____U/A_____

5

6   I, _Jose Miguel Avalos_____, declare that I am over the age of eight-

7   teen (18) years; I am/am not a party to the attached action; I

8   served the attached document entitled: PETITION FOR WRIT OF

9   HABEAS CORPUS/ATTACHED EXHIBITS

10

11  on the persons/parties specified below by placing a true copy of

12  said document into a sealed envelope with the appropriate postage

13  affixed thereto and surrendering said envelope(s) to the staff of

14  the Correctional Training Facility entrusted with the logging and

15  mailing of inmate legal mail addressed as follows:

16  UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA
17  280 SOUTH FIRST STREET, ROOM 2112
    SAN JOSE, CALIF. 95113-3095

18  OFFICE OF ATTORNEY GENERAL
    OF THE STATE OF CALIFORNIA
19  455 GOLDEN GATE AVENUE
    SAN FRANCISCO, CALIF. 94102-7004
20

21  There is First Class mail delivery service by the United States

22  Post Office between the place of mailing and the addresses indi-

23  cated above.  I declare under the penalty of perjury under the laws

24  of the United States and the State of California that the foregoing

25  is true and correct and that I executed this service this ___3___

26  day of _January_, in Soledad, CA.

27

28                                    _____
                                              Declarant