

JOSE MIGUEL AVALOS
CDCR #T-62425  RA-321L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD, CALIF. 93960-0705

FEB 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MIGUEL AVALOS, | Case No. CV 08 — 0949 |
| Petitioner, | PETITIONER'S MOTION TO ENTERTAIN HABEAS CORPUS PETITION PURSUANT TO 28 U.S.C. § 2254 |
| -vs- | |
| BEN CURRY, WARDEN, | E-filing |
| Respondent. | |

WHA

(PR)

COMES NOW, petitioner, **Jose Miguel Avalos**, pursuant to all relevant and applicable **28 U.S.C. § 2254** habeas corpus rules in conjunction with **Fed. R. Civ. P. 7 (b)**, and hereby moves this court to entertain the accompanying petition for writ of habeas corpus under **28 U.S.C. § 2254** to which petitioner further states as follows:

### I. PROCEDURAL HISTORY

Petitioner filed a state habeas corpus petition therein the Monterey County Superior Court on January 23, 2007 to which such petition was denied on March 23, 2007.

Thereafter, petitioner filed a another state habeas petition therein the California Court of Appeals for the Sixth Appellate District to which such petition was denied on May 10, 2007.

Petitioner filed another final state habeas petition therein the California Supreme Court to which such petition

was denied on October 10, 2007. See Appendix (App.) A attached hereto bearing Orders from the State Courts denying habeas petitions.

This instant motion and accompanying federal habeas petition follows.

## II. STATEMENT OF RELEVANT FACTS

Any notion of petitioner's accompanying petition being untimely is due to extraordinary circumstances directly related to the performance of petitioner's habeas corpus counsel, a Mr. Michael Y. Alvarez.

Particularly, soon thereafter petitioner's state direct appeal was concluded--in the latter part of 2003[1/], petitioner's immediate family set out to obtain counsel to represent petitioner on habeas corpus. See p. 9 of verified declaration of Graciela Avalos attached hereto infra at App. B.

Just short of mid-2004, petitioner's mother, Graciela Avalos, settled upon the services of attorney, Michael Y. Alvarez to commence and litigate a habeas action on behalf of petitioner.

Subsequently thereafter, Mr. Alvarez contacted petitioner via a series of letters (App. C hereto) starting from July, 2004, to September, 2005, and at least one "contact" visit therein the prison of which petitioner was incarcerated at

---

1/. Petitioner had forwarded all of his record documents to Mr. Alvarez upon Mr. Alvarez's request and to date, petitioner has not received any of such documents back from Mr. Alvarez. Thus, petitioner is unaware of the exact date of which his state direct appeal was concluded.

that time--all of which indicated Mr. Alvarez having been
formally retained by petitioner's mother to investigate habeas
corpus grounds and the like.

As the abovesaid letters of Mr. Alvarez depict (App.
C hereto), it appeared that he was engaged in an ongoing
investigation of a sort for approximately one and one half
years from the time of his initial retainment--citing that
petitioner's case warranted extensive research and
investigation.

After receiving a last and final letter from Mr. Alvarez
dated September 29, 2005 (App. C hereto), petitioner, to
date, has not heard from Mr. Alvarez--despite his
(petitioner's) repeated attempts to contact him both,
telephonically and letter-wise. See pp. 4-6 of petitioner's
verified declaration attached hereto infra at App. D. Also
see App. E hereto and pp. 9-10 of verified declaration of
Graciela Avalos at App. B hereto.

In the early part of March, 2006, petitioner's mother
informed him that she had learned that Mr. Alvarez had been
arrested and pleaded guilty to felony theft charges directly
related to his professional status as an attorney--stemming
from crimes he committed between 1997 and 2004 (App. F hereto)
where he was to serve a year in jail.

Being so, both petitioner and his mother attempted to
contact Mr. Alvarez (App.'s B and D hereto) in an effort
to both, gain knowledge as to the disposition (if any) of
the status of his habeas action, and if none, to retrieve

3

all of his record documents of which he forwarded to Mr. Alvarez nearly two years prior. See pp. 4-6 of petitioner's verified declaration attached hereto at App. D

In mid-2006 however, petitioner's mother managed to make brief contact with Mr. Alvarez (pp. 9-10 of App. B hereto) where Mr. Alvarez assured petitioner's mother that a habeas action was in the midst of being effectuated on petitioner's behalf.  To date, however, no such action was ever taken, and since the abovesaid latter "brief contact" with Mr. Alvarez by petitioner's mother only, she, nor petitioner, has heard from Mr. Alvarez again at any time.

Finally, petitioner's mother soon learned via a local newspaper (App. F hereto) that Mr. Alvarez had "fled" and became a fugitive from law enforcement in that he had failed to turn himself in (to court) pursuant to his plea agreement. To date, neither petitioner, nor any of his family members/friends have heard from Mr. Alvarez.

Because Mr. Alvarez had in his possession virtually all of petitioner's only copies of his record transcrips of this instant case, it was virtually impossible for petitioner to adequately begin to "take over" his own habeas litigation. See pp. 4-6 of petitioner's verified declaration at App. D hereto.

Petitioner's mother finally managed to locate and obtain limited portions of his record transcripts in the latter part of 2006, whereupon doing so, she immediately forwarded such documents to petitioner. See App. B at pp. 9-10; App.

D at pp. 4-6 hereto.  Petitioner received such documents
on or about December 5, 2006.

With the assistance of a fellow ("jailhouse lawyer")
prisoner, petitioner immediately began to draft a state habeas
petition, the first of which was filed on January 23, 2007,
therein the Monterey County Superior Court.

Petitioner and his mother ultimately (jointly) petitioned
the California State Bar with a "Complaint" against Mr.
Alvarez wherewhich  petitioner recently received notice of
his imminently prevailing as to such complaint. See App.
G hereto.

Although petitioner is in effect, precluded from per
se complaining of Ineffective Assistance of habeas counsel,
he nonetheless avers that in this case, under the particular
circumstances colorably outlined above, Mr. Alvarez's conduct
was egregious and opporbrious enough to warrant a valid
excusal and explanation as to petitioner's substantial delay
in presenting his claims contained therein his habeas
petition. Also see **Spitsyn v. Moore**, **345 F.3d 796 (9th Cir.
2003)** (["]Misconduct of habeas petitioner's attorney was
sufficiently egregious to justify equitable tolling of one
year federal habeas limitations period where attorney was
hired nearly a full year in advance of the deadline for filing
a petition, but completely failed to prepare and file petition
despite fact that petitioner and his mother contacted him
numerous times, by telephone and writing, seeking action,
and where, despite a request that return petitioner's file,

the attorney retained it for the duration of the limitations period more than two months beyond.")

Here, given all of the above thus far, and the fact that petitioner's mother, through sources extraneous from Mr. Alvarez, was only able to retrieve limited portions of petitioner's records, equitable tolling is warranted in this case, thereby rendering December 5, 2006, (the date in which petitioner received his records from his mother) the day of discovery of the factual predicates of the claims presented therein his accompanying petition.

Finally, but most notably, petitioner, having presented therein his state habeas petitions, documentary evidence of Mr. Alvarez's dilatory and criminal conduct, resulted in the state court(s) response(s) not having brought up at any time, the issue of untimeliness, thus indicating that petitioner had adequately explained himself concerning his substantially delayed petition.

Accordingly, based on all of the above, all App.'s hereto, and the accompanying points and authorities infra, this instant motion should be granted thereby allowing for petitioner's accompanying habeas petition to be entertained unimpeded, thereon its merits.

### III. <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Under **28 U.S.C. § 2244 (d)(1)**, A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court. The limitation period shall run from the

latest of:

> (A) the date on which the judgement became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the Constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See **28 U.S.C. § 2244 (d)(1) et seq.**; **Hasan v. Galaza**, 254 **F.3d 1150, 1153-1155 (9th Cir. 2001).**

Here, amid petitioner's position that he is entitled to equitable tolling, he relies upon **§ 2244 (d)(1)(D).** Particularly, as petitioner cogently explained therein Section II supra--and per the verified declarations of petitioner's and his mother attached hereto--due to the reprehensible conduct of his previously retained habeas counsel, Mr. Alvarez, petitioner did not discover the factual predicates of his claims contained therein the accompanying habeas petition until December 5, 2006. Thus, the reason that petitioner's instant accompanying habeas petition is before this court in what appears to be at first glance, an untimely manner, is directly due to the unspeakable conduct of Mr. Alvarez. Moreover, as likewise explained therein Section II herein supra and the aforesaid declarations infra, petitioner exercised due diligence. Therefore, December

5, 2006 is the date of discovery of the factual predicates
of the claims presented therein petitioner's accompanying
habeas petition. **Hasan**, **supra** at pp. 1153-1155.

Furthermore, as duly noted therein Section II herein
supra, neither of the state courts of which petitioner
submitted his state habeas petitions to invoked the procedural
defense of untimeliness or undue delay in response to such
petitions in that petitioner presented therein each said
petition, ample and adequate documentary evidence, as he
does here, to support his explanation of untimeliness.

Finally, even had the state courts relied upon a
procedural defense of untimeliness to deny petitioner's
petitions--which they did not--petitioner urges this court
to take note that California's timeliness standard, when
used as a reason to deny a habeas petition, does not, as
recognized by the Ninth Circuit Court of Appeals, constitute
an independent and adequate state law ground because "it
is so unclear that it does not 'provide the habeas petitioner
a fair opportunity to seek relief in state court'" and the
state does not apply the rule consistently. See **Morales v.-
Calderon**, 85 F.3d 1387, 1390-1392 (9th Cir. 1996).

Based on all of the above presented herein thus far,
petitioner avers that equitable tolling is warranted in this
case in the event that a procedural (**AEDPA**) untimeliness
affirmative defense is contemplated and invoked in response
to petitioner's accompanying habeas petition.

8

## IV.  CONCLUSION

**WHEREFORE**, for all of the foregoing reasons and those stated via the App.'s infra, this court should entertain petitioner's accompanying habeas petition and order the respondent to show cause as to why the relief requested therein such petition should not be granted.

Respectfully submitted,

By: _____

Jose Miguel Avalos
CDCR #T-62425  RA-321L
C.T.F. North Facility
P.O. Box 705
Soledad, Calif. 93960-0705

## V.  VERIFICATION

I, **Jose Miguel Avalos**, hereby declare and affirm under penalty of perjury that all of the foregoing is true and correct and that I am a party to the instant action, to wit, the petitioner.

Executed on this _3_ day of _January_, 2008.

By: _____

Jose Miguel Avalos
CDCR #T-62425  RA-321L
C.T.F. North Facility
P.O. Box 705
Soledad, Calif. 93960-0705

9

APPENDIX   "A"

FILED

MAR 23 2007

LISA M. GALDOS
CLERK OF THE SUPERIOR COUR
_____DEPUTY
S. GARSIDE

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MONTEREY

In re
                                    )   Case No.: HC 5570
                                    )
     Jose M. Avalos                      )   ORDER
                                    )
                 On Habeas Corpus.   )

On January 23, 2007, Petitioner Jose M. Avalos filed a petition for writ of habeas corpus.

Petitioner is currently incarcerated at the Correctional Training Facility in Soledad.

This petition concerns the underlying case of *People v. Jose M. Avalos*, Monterey County

Superior Court, Case No. SS020937A. Petitioner entered a plea of no contest to attempted

murder and admitted allegations under sections 186.22(b) and 12022.5 with the understanding he

would receive a stipulated sentence of 19 years in prison. The trial court, thereafter, sentenced

Petitioner to 19 years in prison he stipulated to and imposed a restitution fine of $3,800 and a

suspended parole revocation fine of $3,800. Petitioner filed a notice of appeal. On appeal,

Petitioner contended that the fines were in excess of the terms of the plea bargain. He requested

that the court reduce each fine to the statutory minimum of $200. The People conceded the issue

and the appellate court agreed that the concession was appropriate. The appellate court modified

the judgment to reduce the restitution and parole revocation fines to $200. As so modified, the

judgment was affirmed.

In the instant petition, Petitioner makes the following claims: 1) Petitioner's trial counsel,

Kevin Hyatt, rendered ineffective assistance; 2) the trial court abused its discretion by failing to

ensure that an adequate factual basis for the plea existed; and 3) there was cumulative error.

A criminal defendant has a federal and state constitutional right to the effective assistance

of counsel. To establish a claim of incompetence of counsel, a defendant must establish both

1

1  that counsel's representation fell below an objective standard of reasonableness and that it is

2  reasonably probable that, but for counsel's error, the result of the proceeding would have been

3  different. *Strickland v. Washington* (1984) 466 U.S. 668, 686-688, 694-695; *People v. Ledesma*

4  (1987) 43 Cal.3d 171, 215-218.

5        In determining whether a defendant, with effective assistance, would not have accepted

6  the offer, pertinent factors to be considered include: whether counsel actually and accurately

7  communicated the offer to the defendant; the advice, if any, given by counsel; the disparity

8  between the terms of the proposed plea bargain and the probable consequences of proceeding to

9  trial, as viewed at the time of the offer; and whether the defendant indicated he or she was

10  amenable to negotiating a plea bargain. In this context, a defendant's self-serving statement--

11  after trial, conviction, and sentence--that with competent advice he would not have accepted a

12  proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as

13  to prejudice, and must be corroborated independently by objective evidence. *In re Alvernaz*

14  (1992) 2 Cal.4th 924, 938.

15        Petitioner claims that his counsel rendered ineffective assistance by miscalculating the

16  maximum penalty he was facing. Petitioner claims that his counsel informed him that he was

17  facing a maximum sentence of 69 years to life. This claim is wrong. According to the Waiver of

18  Rights, Plea of Guilty/No Contest Petitioner signed, he was advised that the maximum possible

19  sentence he could receive was 24 years plus 4 years on parole. (See Waiver of Rights, Plea of

20  Guilty/No Contest.) Moreover, Petitioner has failed to show prejudice. Petitioner has failed to

21  show he was prepared to go to trial. Given the disparity between the terms of the proposed plea

22  bargain and the probable consequences of proceeding to trial, Petitioner's self-serving statement,

23  after the fact, that he would have insisted on going to trial is insufficient to sustain his burden of

24  proof as to prejudice. *Alvernaz, supra*, 2 Cal.4th at p. 938.

25

2

1          Petitioner claims that his counsel rendered ineffective assistance by stipulating to the

2     factual basis for the section 186.22(b) allegation.  He also claims that his counsel rendered

3     ineffective assistance by failing to ensure that Petitioner participated in the stipulation to the

4     factual basis for the plea.  These claims fail.

5          Petitioner has failed to show his counsel's performance was deficient.  Petitioner

6     voluntarily pled nolo contendere to attempted murder and admitted the allegations under sections

7     186.22(b) and 12022.5 pursuant to the plea agreement.  (See Waiver of Rights, Plea of Guilty/No

8     Contest.)  The court made an inquiry to Petitioner to satisfy itself that the plea was freely and

9     voluntarily made, and that there was a factual basis for such plea.  Before entering the plea,

10    Petitioner was advised that on entering a plea of nolo contendere, he would be giving up certain

11    rights.  After Petitioner was questioned, the court found that he understood the nature of the

12    charge and the possible range of penalties and other consequences of his plea.  Petitioner stated

13    on the record that he had read and understood the acknowledgment of waiver of rights form.

14    Petitioner filled out, initialed and signed a two-page superior court guilty/no contest plea form.

15    The plea contains the following statements: 1) Petitioner understood that he was pleading no

16    contest to the offense of Penal Code sections 664/187; 2) Petitioner understood that he was

17    admitting the enhancements under sections 186.22(b)(1) and 12022.5; 3) Petitioner offered his

18    plea freely and voluntarily and of his own accord and with full understanding of all matters set

19    forth in the Information and in the waiver; 4) Petitioner had personally initialed each box and he

20    understood each right outlined in the plea and he waived and gave up each right in order to enter

21    the plea; and 5) Petitioner was entering a plea of no contest because he was in fact guilty.

22    Petitioner's counsel signed the plea, indicating that he had explained Petitioner's rights and had

23    explained and discussed the facts and possible defenses to the charges, and the possible

24    consequences of the plea.  The court found that Petitioner understood and knowingly, voluntarily

25    and intelligently waived his rights, and that there was a factual basis for the plea.

1    Moreover, Petitioner has failed to show prejudice. Petitioner has failed to show he was

2    prepared to go to trial. Given the disparity between the terms of the proposed plea bargain and

3    the probable consequences of proceeding to trial, Petitioner's self-serving statement that he

4    would have insisted on going to trial is insufficient to sustain his burden of proof as to prejudice.

5    *Alvernaz, supra*, 2 Cal.4th at p. 938.

6    Petitioner claims that his counsel rendered ineffective assistance by failing to investigate

7    his case. Assuming arguendo his counsel's performance was deficient, Petitioner has failed to

8    show prejudice. As discussed above, Petitioner has failed to show he was prepared to go to trial.

9    Given the disparity between the terms of the proposed plea bargain and the probable

10   consequences of proceeding to trial, Petitioner's self-serving statement that he would have

11   insisted on going to trial is insufficient to sustain his burden of proof as to prejudice. *Alvernaz*,

12   *supra*, 2 Cal.4th at p. 938.

13   Petitioner claims that his counsel rendered ineffective assistance by failing to adequately

14   prepare for trial. This claim fails. Petitioner voluntarily chose to enter a plea instead of going to

15   trial. To the extent that this claim relates to Petitioner's other claim that his counsel failed to

16   investigate the case, this claim fails for the same reason.

17   Petitioner claims that his counsel rendered ineffective assistance by failing to advise him

18   of potential defenses. Petitioner fails to identify specifically what defenses existed. Assuming

19   arguendo Petitioner's counsel's performance was deficient, Petitioner has failed to show

20   prejudice. Petitioner has failed to show the defenses, if any, that would have succeeded at trial.

21   Given the disparity between the terms of the proposed plea bargain and the probable

22   consequences of proceeding to trial, Petitioner's self-serving statement that he would have

23   insisted on going to trial is insufficient to sustain his burden of proof as to prejudice. *Alvernaz*,

24   *supra*, 2 Cal.4th at p. 938.

25

4

1    Petitioner claims that the trial court abused its discretion when it failed to ensure that an

2 adequate factual basis for the plea existed. This claim is without merit. As discussed above in

3 detail, the court made an inquiry of Petitioner to satisfy itself that the plea was freely and

4 voluntarily made, and that there was a factual basis for such plea. Petitioner filled out, initialed,

5 and signed a two-page superior court no contest plea form. His counsel stipulated there was a

6 factual basis for the plea. The trial court properly accepted the factual basis for the plea.

7    Petitioner's claim of cumulative error fails. As discussed above, Petitioner has failed to

8 show that his counsel rendered ineffective assistance of counsel. He has also failed to show that

9 the trial court abused its discretion by failing to ensure that an adequate factual basis for the plea

10 existed. Consequently, Petitioner has failed to show there was cumulative error.

11    For the foregoing reasons, the petition is denied.

12    IT IS SO ORDERED.

13 Dated: 3-23-07

14

15                                     _____
                                       Hon. Jonathan R. Price
16                                     Judge of the Superior Court

17

18

19

20

21

22

23

24

25

5



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT



**FILED**

MAY 1 0 2007

MICHAEL J. YERLY, Clerk

By _____
DEPUTY

In re JOSE MIGUEL AVALOS,

    on Habeas Corpus.

H031370
(Monterey County
 Super. Ct. No. HC5570)

BY THE COURT:

    The petition for writ of habeas corpus is denied.

(Premo, Acting P.J., and Duffy, J., participated in this decision.)

Dated   **MAY 1 0 2007**      **PREMO, J.**      Acting P.J.

S152952

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re JOSE MIGUEL AVALOS on Habeas Corpus

The petition for writ of habeas corpus is denied. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474.)

SUPREME COURT
FILED

OCT 1 0 2007

Frederick K. Ohlrich Clerk

Deputy

GEORGE

Chief Justice

A P P E N D I X    "B"

## DECLARATION OF GRACIELA AVALOS

I, Graciela Avalos, hereby declare and affirm under penalty of perjury and the laws of the State of California and the United States of America as follows:

1. I am a citizen of the United States of America and a resident of the State of California currently residing in Salinas California in the County of Monterey. I am over the age of 18 years and competent to testify as follows:

2. I am the mother of Jose Miguel Avalos. In February of 2002, when I learned that Jose had been arrested for shooting someone and that the shooting was gang related, I found it quite difficult to believe.

3. Jose has never been into any criminal activities or gangs. He had never been in trouble with the law and he has always been a good child and never really gave me any significant "problems" of any sort. I have always had him "into church" and he is genuinely a God fearing person.

4. Upon my invoking/hiring the services of the Chase Law Group, specifically attorney Kevin Hyatt, I was told/advised by another attorney who appeared to be an associate/representative of Mr. Hyatt, to wit, Steve (Davidson), that if "I really loved my son, I had to pay Fifteen Thousand Dollars ($15,000.00) to Mr. Hyatt in two payments in order to initiate Jose's case. I was also told by "Steve" that per the abovesaid payment(s), Jose's case would be defended "100%."

5. I ultimately paid the abovesaid fee specifically for the services of Mr. Hyatt. Despite so, Mr. Hyatt only showed

up to Jose's court dates approximately three times, i.e., at the stage of Jose's sentencing and approximately twice prior to such sentencing.

6. Another attorney named "Matthew", who apparently was also "from" the Chase Law Group, appeared at Jose's court dates on Mr. Hyatt's behalf far more than Mr. Hyatt himself (or anyone else attorney-wise.) "Steve" appeared at Jose's court dates periodically, but not as often as did Matthew. I never hired Matthew or Steve.

7. I was also informed by Jose that Mr. Hyatt's first "contact" with him (therein the jail) was for approximately ten minutes only, where Mr. Hyatt merely outlined all of the "evidence against" Jose. Jose further informed me that all other subsequent visits he received from Mr. Hyatt were for less than three minutes each and soley based on Mr. Hyatt attempting to persuade Jose to accept a 21 year prison deal for attempted murder, a gun charge, and a gang charge.

8. Jose further informed me that at each of the above-said vists, his attempts to tell Mr. Hyatt his side of the story were thwarted by Mr. Hyatt shunning him and telling him that he was facing life in prison and that there was "no story" that could save him. Jose further informed me that Mr. Hyatt never at anytime discussed the "ins and outs" of his case or any parts of the case in any fashion. Mr. Hyatt based each of his visits on trying to persuade him (Jose) to accept the 21 years and never discussed a defense(s) or any other options besides the 21 year deal.

9. Jose further informed me that each time that he re-

2

fused to accept the deal, Mr. Hyatt would get angry and just leave the visit in the middle of he and Jose's conversation in a rude manner.

10. Highly concerned and alarmed with all of the above, I immediately contacted Mr. Hyatt to confront him with that which Jose relayed to me as outlined above. Mr. Hyatt told me that Jose could not win. I asked Mr. Hyatt what was the evidence that "they" (the prosecution/D.A.) had against him and he informed me that Jose had "confessed to everything" on videotape.

11. Mr. Hyatt said that Jose admitted guilt to specifi- cally attempting to murder someone for the benefit of a gang. I told Mr. Hyatt that not only did I not believe that, but that Jose unequivocally had denied being responsible for the crime--especially in the manner ot which it had been alleged, i.e., for the benefit of a gang. I asked Mr. Hyatt to show me the videotape. He told me that I would be able to see it after the trial or after the case was "over."

12. I also asked Mr. Hyatt did he investigate to find- out if the so call "confession" was based on police pressure or based on Jose having been under the influence of drugs. He told me that it was no need to "investigate that" because "it didn't matter" simply because the D.A. would simply "get around that."

13. I asked Mr. Hyatt had he did any other investigation into the case and he said there was "nothing to investigate." I asked Mr. Hyatt how could "they" convict Jose for the gang charge when Jose is clearly not a gang member or associate,

3

or a criminal. Mr. Hyatt said that the fact that the victim was a gang member, the fact that the victim was hispanic as is Jose, and the fact that Jose has a tatoo that reads: "My Crazy Life" was enough for the "D.A." to use to convict him and that a jury would have no problem convicting Jose based on the above.

14. I told Mr. Hyatt that there were many people/family and friends (witnesses) including our family pastor, Alejandro F. Musumeci, who were more than willing to come forward on Jose's behalf to provide credible testimony that he is not a gang member or even a part time associate and that he is not a "bad person" at all. Mr. Hyatt said that he would try to contact "these people" and our family pastor, but that it quite likely would "do no good" because Jose had purportedly confessed to "everything" and that the victim had purportedly died.

15. I also asked Mr. Hyatt had he made any efforts to prepare Jose to talk to/address the court/judge. Mr. Hyatt said that it was "no need for that" and that it would probably do no good any way.

16. Mr. Hyatt's overall attitude subsequent to my hiring him had dramatically changed for the worse. He'd become very rude, evasive and unforthcoming and even told me that the D.A. was "getting tired of this case dragging on" and that if Jose continued to refuse to accept the 21 year deal that she (the D.A.) would make sure that he received life in prison.

17. Mr. Hyatt further informed me that Jose had repeatedly told him that "God would take care of everything" and that

4

"someone" needs to tell Jose that such "religious attitude" should not be relied upon because it is not going to prevent him from getting life in prison if he doesn't take the 21 year deal....and this is no time to be "religious."

18. Upon making physical contact with Mr. Hyatt at one point, he informed me that he had attempted to contact my pastor on several occasions but that he had great difficulty "catching up" with him. I informed Mr. Hyatt that my pastor is virtually always in his office and I even called him via my cellphone in the presence of Mr. Hyatt and made contact with my pastor immediately where I then handed my phone to Mr. Hyatt so that he could converse with my pastor.

19. Mr. Hyatt "suspiciously" walked away from my immediate presence with my phone while talking to my pastor out of my hearing range in a secretive manner and returned approximately five minutes later and returned my phone. He said that he would be contacting my pastor again soon, but said nothing more.

20. I spoke with Jose further and he informed me that "Steve" had also been attempting to persuade him to take the 21 year deal upon his visiting Jose therein the Jail.

21. I spoke with my pastor after Mr. Hyatt's phone contact with him as outlined above where my pastor informed me that Mr. Hyatt had contacted him one time and informed him that the victim had died and that he (my pastor) was going to advise Jose to accept the 21 year deal so that he would not get life. My pastor said that he fully supported Jose's stance of putting it "all in God's Hands" but that due to the fact that the

5

victim had now died, it would be best that he accept the 21 year deal and "keep the faith" amid doing so--even though Jose is not a gang-member/associate and even though there was no evidence to support the gang charge.

22. My pastor also informed me that Mr. Hyatt had asked him to try to "talk some sense" into Jose about taking the deal and to also try to "talk to me" about persuading Jose to take the deal in that Jose and I both were very reluctant to have him plead to a (gang) charge that he is not guilty of--especially in light of the fact that Mr. Hyatt had not discussed or investigated Jose's "side of the story."

23. My pastor said that Mr. Hyatt told him that if Jose did not take the deal, not only would he get 25 years to life in prison at trial, but it would be a total waste of the $15,000.00 that I paid him.

24. Because of all of the above, Jose was ultimately persuaded to take the deal. Jose informed me that he had written letters to the judge and the D.A. to inform them from his heart that he was not a gang member and that the shooting was not related to any gang whatsoever. He also said that he included several bible verses therein such letters.

25. The deal was ultimately set at 19 years there at a formal court hearing in the latter part of May of 2002. Jose was formally sentenced on June 27, 2002. Between the latter part of May, 2002, and Jose's June 27, 2002 sentencing date, Mr. Hyatt allowed me to view the videotape of

Jose's so call confession.  Upon my view of the video, I no-
ticed that Jose never actually confessed to attempting to kill
anyone and that he repeatedly denied that the shooting was re-
lated to gangs.

26. I also heard from several people during the latter
said time that not only had the victim "not died", but that
he was never subjected to life threatening injuries as a re-
sult of the shooting.

27. I immediately attempted to contact Mr. Hyatt concern-
ing the fact about the victim (possibly) still being alive--
only to encounter great difficultiy in contacting him.  I fi-
nally made contact with him on the phone where he told me
that he would discuss the matter with me in person because
at the time he was "very busy".

28. I contacted Mr. Hyatt again telephonically to in-
form him that I wanted to definitely attend Jose's sentencing
hearing.  He informed me that Jose's sentencing was scheduled
for June 27, 2002 at 10:00 a.m.

29. As a precaution, I sought the temporary assistance of
a local attorney, Eugenio Martinez to look into my son's case
before he was formally sentenced.  A female representative of
Mr. Martinez accompanied me on his behalf to Jose's sentencing
whereupon she and I showing up at the courtroom approximately
15 minutes to 10 a.m. (to halt the proceedings) we were told
that Jose had already been sentenced at "8:30 a.m." that mor-
ning--blatantly contrary to the time Mr. Hyatt informed me.

30. I finally made contact with Mr. Hyatt after Jose
was sentenced to confront him with his "deception",  He again

informed me that we would meet "in person" and discuss "everything" formally. I also asked him for a copy of the video tape of Jose's so call confession. He told me that he would make a copy for me and send me the videotape and all of Jose's paperwork.

31. Mr. Hyatt and I never did meet in person as he assured me above. He would not return my calls. He was very evasive. To date, Mr. Hyatt and I never met in person as discussed above. He never did send me a copy of the video-tape. It was nearly two years after Jose was sentenced that Mr. Hyatt finally sent me Jose's court papers. He told me that the video tape got lost and could not be located..

32. After Jose's appeal was concluded, I hired another attorney, Michael Y. Alvarez, to represent Jose on habeas corpus. Mr. Alvarez informed me that Mr. Hyatt had indeed done a very poor job in representing Jose and that because so, Jose had a great chance at prevailing on habeas corpus.

33. Mr. Alvarez informed me that Jose's case involved extensive research and investigation, but that he indeed would effectuate a habeas petition on Jose's behalf provid-ing I paid him his requested fee. I paid Mr. Alvarez and he purported to commence an investigation for Jose.

34. Despite my having hired Mr. Alvarez in early 2004, his investigation seemed to never have ended. He did write to Jose and even visited him once, but he was always very difficult for me to contact. He would not return my calls for weeks at a time. So was the same for his secretary(s)

35. In March, 2006, I learned that Mr. Alvarez had

8

pleaded guilty to felony theft where he was to serve a year
in jail--all of which stemmed from his having defrauded se-
veral of his clients out of hundreds of thousands of dollars
over a period of seven years.

36. I attempted to contact Mr. Alvarez immediately after
learning of such news only to encounter great difficulty. I
finally managed to make telephonic contact with Mr. Alvarez
(once) where he assured me that despite his conviction, he
would still be able to properly effecutate Jose's habeas
corpus. It never happened. When it did not happen, I
attempted to retrieve Jose's paperwork from Mr. Alvarez/his
office--all to no avail. His fellow partners were equally
of no help. His secretary(s) never returned any of my calls.

37. In mid-2006 I learned via a local newspaper that Mr.
Alvarez had become a fugitive in not having turned himself
in to serve his sentence of one year in jail. I immediately
became highly alarmed and attempted to make contact with him
to retrieve all of Jose's records--of which Jose and I had
sent to him "our only copies". However, I was unable to con-
tact Mr. Alvarez and the staff there at his office were also
of no help.

38. I finally was able to locate a "limited portion" of
Jose's records wherewhich upon doing so, I then immediatley
forwarded such documents to Jose so that he could commense to
"work" on his own case in hopes of salvaging all of the "da-
mage" thus far.

39. Jose informed me that he too, attempted to contact
Mr. Alvarez via a plethora of letter and phone attempts--all

9

to no avail.  To date, I have not heard from Mr. Alvarez.

40. I, **Graciela Avalos**, hereby declare and affirm on this  28  day of   DECEMBER   , 2006 that all of the fore-going is true and correct to the best of my knowledge.

Graciela Avalos
D E C I A R A N T

10

A P P E N D I X    "C"

Pg 1-12

LAW OFFICES
OF
**MICHAEL Y. ALVAREZ**

TELEPHONE
(831) 751-1891

984 LUPIN DRIVE, SUITE # 3
SALINAS, CALIFORNIA  93906

FACSIMILE
(831) 751-1894

July  26, 2004

Jose Miguel Avalos   T-62425
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95531-7500

LEGAL LETTER

Re: My Client: Jose Miguel Avalos
Inmate No.:T-62425

Dear Mr. Avalos:

This is to inform you that your mother, Graciela Avalos, has retained my office for the purpose of meeting  with you personally to discuss your case regarding any potential basis for a Habeas Corpus petition. I am in the process of trying to obtain a copy of the videotape regarding your taped conversation. Evidently, your mother has requested it from your previous attorney, but he has not provided it to her.

As soon as I have received  the videotape and have made arrangements with Pelican Bay State Prison, I will inform you of the date that I will be traveling to visit with you. In the meantime, please have any and all documents that you might have regarding your case so that I can review that with you  when I go visit with you.

Very truly yours,

MICHAEL Y. ALVAREZ

MYA:rg

LAW OFFICES
OF
**MICHAEL Y. ALVAREZ**

TELEPHONE

(831) 751-1891

984 LUPIN DRIVE, SUITE 3
SALINAS, CALIFORNIA 93906

FACSIMILE

(831) 751-1894

August 30, 2004

Jose M. Avalos    T-62425
Pelican Bay St. Prison
Crescent City, CA 95531-7500

LEGAL-LETTER

Re: Visiting Date

Dear Mr. Avalos:

This will confirm that I have requested the tape from your former attorney, Kevin Hyatt. I was told I would have it in approximately two weeks. I have contacted Mr. Hyatt office to find out the status on the tape is. As soon as I receive a response, I will then contact you so that we can schedule a visit.

Very truly yours,

MICHAEL Y. ALVAREZ

MYA:rg



LAW OFFICES
OF
**MICHAEL Y. ALVAREZ**

TELEPHONE                                984 LUPIN DRIVE,  SUITE 3                    FACSIMILE
(831) 751-1891                             SALINAS, CALIFORNIA  93906                  (831) 751-1894

October 4, 2004

Jose M. Avalos    T-62425
Pelican Bay State Prison                                    LEGAL-MAIL
Crescent City, CA 95531-7500

Re: Interview with Jose M. Avalos

Dear Mr. Avalos:

This will confirm that I will be setting up an appointment to visit you in the next couple of weeks. Please plan on getting any and all documentation you might have regarding your case.

As I had informed you, Mr. Hyatt had requested that the videotape be mailed to my office from his Los Angeles office. Evidently, the tape was not found. Therefore, they do not have a videotape for us.

Please plan on being prepared to discuss your case. I look forward to meeting you.

Very truly yours,

MICHAEL Y. ALVAREZ

MYA:rg

cc. Graciela Avalos

Pg # 12

LAW OFFICES
OF

TELEPHONE

(831) 751-1891

# MICHAEL Y. ALVAREZ

984 LUPIN DRIVE, SUITE 3
SALINAS, CALIFORNIA  93906

FACSIMILE

(831) 751-1894

November 22, 2004

Jose M. Avalos-T-62425
Pelican Bay State Prison
Crescent City, CA 95531-7500

      Re: Visiting Date

Dear Mr. Avalos:

      This is to inform you that I have changed the appointment for your visit. My visiting date will be on December 3, 2004 @ 1:00 p.m. Please have any documents you might think might be helpful towards this case. I look forward to meeting you.

        Very truly yours,

        MICHAEL Y. ALVAREZ

MYA:rg

Pg 5-12

LAW OFFICES
OF

TELEPHONE

(831) 751-1891

# MICHAEL Y. ALVAREZ

984 LUPIN DRIVE,  SUITE  3
SALINAS, CALIFORNIA  93906

FACSIMILE

(831) 751-1894

December 20, 2004

Jose M. Avalos T-62425
Pelican Bay State Prison
Crescent City, CA 95531-7500

Re: Visiting date

Dear Mr. Avalos:

This will confirm that I have rescheduled our appointment to visit you on December 28, 2004. I apologize for the delay. However, I was not able to have a C-file review the last time I had my appointment scheduled with you.

The prison has confirmed and  we will be able to review your Central file. I look forward to meeting with you on that date.

Very truly yours,

MICHAEL Y. ALVAREZ

MYA:rg

cc. Graciela Avalos



LAW OFFICES
OF

TELEPHONE
(831) 751-1891

# MICHAEL Y. ALVAREZ
984 LUPIN DRIVE, SUITE 3
SALINAS, CALIFORNIA 93906

FACSIMILE
(831) 751-1894

February 14, 2005

Jose M. Avalos T-62425
Pelican Bay State Prison
Crescent City, CA 95531-7500

      Re: Writ of Habeas Corpus

Dear Mr. Avalos:

      It was a pleasure meeting with you and discussing your case. I have reviewed the documentation you have sent to my office. Evidently, the only issue raised by your appellate attorney was the issue of restitution. No other issues were raised. The time for your appeals have expired.

      The only alternative you might have is to seek a Writ of Habeas Corpus. I have spoken to your mother about this. Once you and her have had on opportunity to discuss this matter we can decide if you wish to pursue this matter.

                  Very truly yours,

                  MICHAEL Y. ALVAREZ

MYA:rg

Pg 8-12
M

LAW OFFICES
OF

TELEPHONE                **MICHAEL Y. ALVAREZ**                FACSIMILE

(831) 751-1891              984 LUPIN DRIVE, SUITE 3              (831) 751-1894
                            SALINAS, CALIFORNIA 93906

March 14, 2005

Jose M. Avalos
Pelican Bay St. Prison T-62425                    LEGAL- MAIL
Crescent City, CA 95531-7500

    Re: Habeas Corpus Petition

Dear Mr. Avalos:

      As you know, I have spoken to your mother regarding the issues surrounding any potential Habeas Corpus Petition. As I informed your mother, I will need to conduct some initial investigation and research before I can give you a measure of a successful argument you would have on a Habeas Corpus Petition.

      As I informed you, the issues are very narrow and since all your time for appeals have lapsed. It will be an extremely difficult matter. However, it might be worth your investment due to the severity of your sentencing.

      Please inform me of your position.

      Very truly yours,

      MICHAEL Y. ALVAREZ

MYA:rg

LAW OFFICES
OF
# MICHAEL Y. ALVAREZ

TELEPHONE

(831) 751-1891

984 LUPIN DRIVE, SUITE 3
SALINAS, CALIFORNIA 93906

FACSIMILE

(831) 751-1894

March 25, 2005

Jose M. Avalos -T-62425
Pelican State Prison
Crescent City, CA 95531

LEGAL-MAIL

Re: Investigation on this matter.

Dear Mr. Avalos:

I have received your letter regarding your case. I appreciate that you will offer all the assistance you can. As soon as I can commence my investigation and research, I will be contacting you to let you know how this case is proceeding.

I will be speaking with your mother regarding the procedures and progress on this case.

Very truly yours,

MICHAEL Y. ALVAREZ

MYA:rg

LAW OFFICES
OF
**MICHAEL Y. ALVAREZ**

TELEPHONE                                                                                          FACSIMILE
(831) 751-1891                          984 LUPIN DRIVE, SUITE 3                          (831) 751-1894
                                        SALINAS, CALIFORNIA 93906

March 28, 2005

Jose M. Avalos -T-62425
Pelican State Prison                                                    LEGAL-MAIL
Crescent City, CA 95531

Re: Habeas Corpus Petition

Dear Mr. Avalos:

I have received your letter and I have spoken briefly to your mother. As you know, I have not been formally retained to do any work on any Habeas Corpus Petition or any other matter related to your sentence. I will be discussing a retainer with your mother the next time we meet. If I am retained, I will immediately contact you.

Very truly yours,

MICHAEL Y. ALVAREZ

MYA:ma

Cc: Graciela Avalos



LAW OFFICES
OF
**MICHAEL Y. ALVAREZ**
984 LUPIN DRIVE, SUITE 3
SALINAS, CALIFORNIA 93906

TELEPHONE
(831) 751-1891

FACSIMILE
(831) 751-1894

April 18, 2005

Jose M. Avalos -T-62425
P.B.S.P. A8-102
P.O. Box 7500
Crescent City, CA 95531-7500

LEGAL-MAIL

      Re: Investigation

Dear Mr. Avalos:

    Thank you for your letter of April 14, 2005. I have not been able to set up an appointment with your mother to discuss a possible retainer on the Habeas Corpus Petition. Therefore, I cannot begin any research or investigation into your matter. Once I am retained and I can commence my research, I will be able to answer more questions for you regarding your case.

    I am sure your mother will contact you as soon as she retains my office and I certainly will do the same. Please keep in touch.

              Very truly yours,

              MICHAEL Y. ALVAREZ

MYA:rg

Pg 2-12

LAW OFFICES
OF
**MICHAEL Y. ALVAREZ**

TELEPHONE
(831) 751-1891

984 LUPIN DRIVE, SUITE 3
SALINAS, CALIFORNIA 93906

FACSIMILE
(831) 751-1894

May 06, 2005

Jose M. Avalos-T-62425
P.B.S.P. A8-102
P.O. Box 7500
Crescent City, CA 95531-7500

LEGAL-MAIL

Re: Visitation with Mother

Dear Mr. Avalos:

This will confirm that I have met with your mother regarding your case. We have agreed that I will proceed with the investigation/research on the Petition of Habeas Corpus. I explained to your mother that this will require a extensive research. I have reviewed all the appeal matters you have provided to my office.

Once I have completed the preliminary research, I will contact you so that we can discuss your case. I will keep in touch. Please feel free to contact me if you have any questions regarding this matter.

Very truly yours,

Michael Y. Alvarez

MYA:rg

Pg 12-12

## MEMORANDUM

TO: Jose M. Avalos-T62425

FROM: Michael Y. Alvarez

DATE: 9/29/05

SUBJECT: Research Habeas Corpus Petition

Dear Mr. Avalos:

As you know, I am still working on the research regarding your matter. Since your case limited information to review, it is important that we do a adequate and detail research prior to commencing any formal action.

I will keep you informed of my ongoing research. Feel free to write me a line if you have any questions.

Very truly yours,

MICHAEL Y. ALVAREZ



Copy of second Check

| Sequence Number | Amount | Posting Date |
|---|---|---|
| 0000000000025228794 | $2,500.00 | 2/15/2006 |



Enclosed is the photocopy you requested on  8/08/06

SALINAS ALISAL
Requested by: CINDY
1335FCCA

item:NSC V4AR 002-02-6670105856                    1

| Sequence Number | Amount | Posting Date |
|---|---|---|
| 00000000033001876 | $2,500.00 | 50X2005 |

APPENDIX   "D"

JOSE M. AVALOS
CDC #T-62425  RA-321L
C.T.F. NORTH FACILITY
P.O. BOX 705
SOLEDAD CALIF. 93960-0705

IN THE SUPERIOR COURT OF CALIFORNIA

IN AND FOR THE COUNTY OF MONTEREY

SALINAS DIVISION

| | | |
|---|---|---|
| JOSE M. AVALOS, | ) | Habeas Corpus Case N._____ |
| | ) | Super. Ct. Case No. SS020937A |
| Petitioner, | ) | |
| | ) | DECLARATION OF JOSE M. AVALOS, |
| -vs- | ) | PETITIONER |
| | ) | |
| BEN CURRY, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| _____ | ) | |

I, **Jose M. Avalos**, hereby declare and affirm under penalty of perjury and the laws of the State of California and the United States of America as follows:

1. I am a citizen of the United States of America and a resident of the State of California, currently incarcerated in a California penal facility, to wit, the Correctional Training Facility (C.T.F.). I am over the age of 18 years and competent to testify as follows:

2. Following my February, 2002 arrest for various crimes resulting from a shooting that occured in February of 2002, in Salinas California, and during my detainment therein the local jail, I was contacted by a Mr. Kevin Hyatt, an attorney my mother hired/retained to represent me for such crimes (pursuant to the above captioned Superior Court case number.)

3. Upon my initial contact with Mr. Hyatt and virtually

all subsequent contacts with him, I immediately and consistent-
ly thereon forward, informed Mr. Hyatt (because I was charged
with having committed the shooting for a gang) that I was/am
not a gang member, nor an associate of "any" gang--even on a
part time basis--and that by no means was the shooting gang
related.

4. Mr. Hyatt appeared to concede with me concerning the
gang issue--citing that "it appeared that there was no evi-
dence that I was a gang member or that the shooting was gang
related."

5. Mr. Hyatt ultimately contacted me on several more oc-
casions where he informed me that a "21 year plead deal" had
been offered to me by the prosecution and that if I accepted
such deal that the assault charge and a gang and gun allega-
tion would be dismissed.

6. Because the abovesaid deal consisted of my admitting
that the shooting was for the benefit of a gang, I immediately
expressed vehement opposition to the "deal" because such alle-
gation was simply not true.

7. Mr. Hyatt informed me that "regardless of 'what'", the
21 year deal was a very "good deal" because I was facing 69
years to life if I went to trial on all of the charges and 25
to life for just the attempted murder alone.  He informed me
that I was facing 10 years for each of the gun/gang allega-
tions and 4 years for the assault charge consecutive to 25
years to life for the attempted murder.

8. I soon received some advice from several fellow in-
mates held therein the jail with me who told me that my lawyer

2

was not providing me with the correct information concerning the amount of time I was facing for the crimes I was charged with.

9. Although I was not able to provide Mr. Hyatt with any concrete facts, I nonetheless expressed to him that I felt that he was not telling me the correct information as a whole. He responded by saying: "who are you going to believe, some 'jailhouse lawyers' who are in no better position than you, or your lawyer, who knows what he's doing." He also told me that I needed to talk to my family and my pastor because he had already talked to them and explained the situation.

10. Mr. Hyatt said that maybe "they" (my family/pastor) can get me to "see the light" because 21 years is a whole lot better than life in prison--even if it meant that I was pleading to the (gang allegation) (something I didn't do.)

11. He also told me that the fact that I had a tatoo that read "My Crazy Life" and that the victim was a gang member, that the D.A. would "chew me up" with these two factors in front of a jury and that I was guaranteed to lose at trial as to the gang allegations and all of the charges.

12. I was still very reluctant to accept blame for the gang allegation. Finally, my pastor contacted me and nearly begged and pleaded with me to accept the 21 year deal because he did not want to see me get "life in prison." My pastor told me that he could not believe that the D.A. could prove the gang allegation but that because my lawyer told him that it was nothing he could do, that I should take the 21 years. My pastor said that Mr. Hyatt said that he contacted him to

3

specifically talk to me to persuade me to take the deal.

13. My pastor (Alejandro Mucumeci) also contacted my parents/family to try to persuade them on Mr. Hyatts behalf to talk to me to take the 21 year deal. My mother and fathaer visited with me there at the jail and told me that I should take the deal to keep from getting life in prison.

14. Never at any time did I tell jail officials that I was a gang member or that I "desired to be housed with 'surenos' or any gangs." At most, I predominately associated with non-affiliate "Mexican Nationals" (natives of Mexico)-- all of whom were not associated with gangs.

15. Mr. Hyatt never at any time informed me that I would have to register as a gang member.

16. Upon my mother hiring/retaining Mr. Alvarez to represent me on habeas corpus, I began receiving a series of letters from him indicating that he was engaged in an investigation on my behalf for habeas corpus purposes. Mr. Alvarez came to visit me at least once while I was at Pelican Bay State Prison.

17. I ultimately forwarded virtually all of my records/documents pursuant to my case to Mr. Alvarez per his request. Although Mr. Alvarez claimed to have been engaged in extensive investigation, never at any time was a habeas petition effectuated on my behalf. The last time that I personally heard from Mr. Alvarez was September of 2005.

18. From September, 2005 until approximately March of 2006, I attempted to contact Mr. Alvarez both via telephone and "letterwise" all to no avail. It was in Mid March of 2006 that

4

I learned from my mother that Mr. Alvarez had been convicted (pleaded guilty) of felony theft directly related to his position as a lawyer.

19. I immediately began attempting to contact him before he had to go serve his time in an effort to find out about the disposition of my habeas corpus litigation as well as to retrieve all of my documents back from him in the event that I would have to either effectuate a habeas action myself, or seek assistance in doing so elsewhere.

20. However, I never received a response from Mr. Alvarez nor from his associates there at his law firm.

21. At one time, my mother managed to finally make contact with Mr. Alvarez who informed her that despite his conviction and imminent sentence, he nonetheless had the habeas action "under control". Yet, never was a habeas action filed.

22. Soon thereafter, my mother informed me that she had learned via a local newspaper that Mr. Alvarez had fled from law enforcement (became a fugitive) by not turning himself in to began serving his sentence of one year in jail.

23. After learning of such, I immediately attempted to contact Mr. Alvarez's fellow associates at his law firm in an effort to retrieve all of my documents of which I initially forwarded to Mr. Alvarez. However, never did I recieve a response from any of his staff to date.

24. My mother encountered the same problems. Finally, my mother managed to locate a limited portion of my records to send to me so that I could began to effectuate a habeas corpus action. Because she was not authorized to send me such re-

5

cords under the auspice of "legal mail", it took over a full month for me to recieve such records in that mail here at my current place of incarceration is over one month behind.

25. After finally receiving my documents in December of 2006, I immediately set out to effectuate a habeas action with the help of fellow inmates.

26. I, **Jose M. Avalos**, hereby declare and affirm on this ___30___ day of ___December___, 2006, that all of the foregoing is true and correct.

Jose M. Avalos
D E C L A R A N T/Petitioner

6

A P P E N D I X    "E"

March 27, 2006

Law Offices Of:
Michael Y. Alverez
984 Lupin Drive, Suite #3
Salinas California, 93906

RE: Recent Developments Concerning Representation on Habeas
    Corpus in People v. Avalos, Case #SS020937A

Dear Mr. Alverez,

        I just recently learned from my mother, of your arrest and
subsequent "conviction" (for/to the effect of "fraud") in which
because of such "new" developments, I am instantly attempting to
make direct contact with you (in the event that you are not cur-
rently 'physically' incarcerated at this time)---in an effort to
gain clarification as to the current status and disposition of
your research and investigation regarding my case since my mother/
family has retained you for my representation.

        As I am sure that you are well aware, my case is governed
by the strict and stringent time constraints and mechanics of the
Antiterrorism and Effective Death Penalty Act (AEDPA)---all of
which such "time constraints" must be met in order for me to seek
and obtain federal habeas corpus review should such level of liti-
gation becomes necessary.  Moreover, and just the same, you are
also well aware that my previous (appellate) counsel performed a
minimal and "skeleton job" as to my direct appeal, effectively com-
pounding the "uphill battle" that I am met with towards effectu-
ating and obtaining the sought for relief.  Accordingly, as I am
sure you would/should understand, it is more than imperative that
I "get the ball rolling" in my case.  As such and because my fami-
ly and I are uncertain as to what (adverse) impact your arrest and
conviction would have on your performance and continued represen-
tation in my case, we/I have decided to seek assistance elsewhere.

        Accordingly, I now implore you to send at your most earliest
convenience, all documents/paperwork (back) to me (or my mother)
including, but not limited to, the appellate opening brief, the
respondent brief, the reply brief, the court of appeal opinion,
and the California Supreme Court opinion concerning my petition
for review---all so that I can effectively pursue a collateral
(habeas corpus) litigation and conjunctly preserve my compliance
with the AEDPA.

        I have in the meantime, sought the immediate assistance of a
highly skilled "jailhouse lawyer" if you will pending my family
retaining "new counsel" who has diligently "looked into" the pre-
servation of the AEDPA compliance---all of which appears to be a
"close call" (as it is that due to my not having the latest (Cali-
fornia Supreme Court opinion concerning my petition for review---
in which such latest opinion of the state courts is the determin-
ing factor when the AEDPA "timeline" commences)---I am thus, pre-
sently unsure of the exact date in which my petition for review

Mr. Alverez,
Page Two
March 27, 2006

was adjudicated/denied.   Therefore, it is imperative that I ob-
tain such documents as mentioned hereinabove immediately.

    Thanking you in advance for your understanding and immediate
attention to this matter, I shall confide that you/your office
will accommodate me as so requested.

Very sincere,

Jose M. Avalos
CDC #T-62425   RA-321
C.T.F. North Facility
P.O. Box 705
Soledad Calif. 93960-0705

cav/JMA

cc: Graciela Avalos

March 27, 2006

Law Offices Of:
Michael Y. Alverez
984 Lupin Drive, Suite #3
Salinas California, 93906
Attention: Paralegal

RE: Habeas Corpus Representation in <u>People v. Avalos</u>, Case
    #SS020937A

Dear Sir/Madam Paralegal (for Michael Y. Alverez),

     In "Mid-2005", this office (Michael Y. Alverez) was retained
by my family/mother to represent me on habeas corpus pursuant to
the above captioned case number.  To date, a habeas corpus writ
has not been drafted and effectuated.  I have since learned that
Mr. Alverez has suffered a recent arrest (for/to the effect of
"fraud") and subsequent conviction just the same for such.  As
such, my concern as to his continual representation of me has
understandably been quite "heightened" wherewhich I/my family
have now decided to seek legal assistance elsewhere both due to
the recent developments concerning Mr. Alverez himself as described
above and likewise due to his not having yet filed any "paperwork"
(habeas corpus) on my behalf (especially in light of the strict
time constraints of the <u>AEDPA</u>).

     Enclosed, you shall find a letter directly addressed to Mr.
Alverez himself imploring and requesting <u>all</u> documents that per-
tain to my case to be returned to me/my family at his most earli-
est convenience.  However, in the event that his recent conviction
has resulted in him being incarcerated and thus physically unavail-
able, I am imploring upon you to accommodate the requests made
therein the enclosed letter to Mr. Alverez.

     I shall now thank you in advance for your prompt attention to
this matter and will likewise confide that you will accommodate my
request accordingly.


Very sincere,

Jose M. Avalos
CDC    #T-62425   RA-321
C.T.F. North Facility
P.O. Box 705
Soledad Calif. 93960-0705

cav/JMA

cc: Graciela Avalos

JOSE M. AVALOS T-62425
C.T.F. RA-321
P.O. BOX-705
SALINAS, C.A. 93960-705


JANUARY, 30, 2006


MICHAEL Y. ALVAREZ
984 LUPIN DRIVE, SUITE #3
SALINAS, C.A. 93906.                    LEGAL-MAIL


    RE: RESEARCH


    DEAR: MR. ALVAREZ


        IM WRITING THIS LETTER IN REGARDS TO MY CASE
IN CHIEF, MR. ALVAREZ, IM REALY CONSERNED IN YOUR
EFFORT TO INFORM ME OF ALL DETAIL'S REGARDING MY CASE.
    I WOULD REALY like TO KNOW EVERYTHING THAT YOU HAVE
DONE THROUGHOUT THE TIME THAT YOU WERE RETAINED BY
MY MOM?
        SINCE IVE TRANSFERED HERE TO SOLEDAD STATE
PRISON", I HAVENT HEARD FROM YOU YET. SO I WOULD
REALLY APPRECIATE IT IF YOU WOULD INFORM ME OF YOUR
PROGRESS SINCE YOU HAVE EXCEPTED MY CASE.
        IM ALSO CONCERNED ABOUT ME HAVING TO DEAL
WITH THIS SITUATION IN THE BLIND AND ALSO THE LACK OF
KNOWLEDGE I HAVE IN REGARD'S TO THE LAW, AND IT
BOTHERS ME THAT SINCE IVE TRYIED TO HELP YOU OUT WITH
NOTES, IVE SEEN NO PROGRESS IN MY CASE.
        MR. ALVAREZ, I HAVE JUST A COUPLE OF QUESTION'S
FOR YOU TO RESPOND TO:
        1) I WOULD REALLY like TO KNOW YOUR BACKGROUND
AND HOW loNG HAVE YOU BEEN A "DEFENCE ATTORNEY".
        2) AND I WOULD REALLY APPRECIATE THAT YOU WOULD HONOR
MY REQUEST ON MY QUESTION AS THEY WOULD COME
SPARADICIALLY DURING THE COURSE OF OUR ENGAGEMENT

AS I CLIENT & ATTORNEY.

MR. ALVAREZ, I'M NOT KNOWLEDGEABLE IN THE LAW LIKE I'VE STATED PRIOR IN THIS LETTER, BUT THROUGHOUT THE COURSE OF MY INCARSERATION I'M LEARNING A LOT ABOUT MY RIGHT'S AND THE RIGHT TO HAVE AN ATTORNEY REPRESENT ME THROUGHOUT THE COURSE OF MY APPEAL PROCES, AND THAT STATES THAT IN THE 6TH AMENDMENT OF THE CONSTITUTION AND MY RIGHT TO "DUE PROCESS", AND TO MY KNOWLEDGE THAT'S THE 14TH AMENDMENT.

MR. ALVAREZ, I WOULD REALLY APPRECIATE IT IF YOU WOULD KEEP ME INFORM OF ALL THE INFO AND PROGRESS OF MY CASE. I REALLY WANT TO BE INVOLVED AND INFORMED AS MUCH AS POSIBLE OF MY CASE.

RESPECTFULY YOUR'S

X

P.S. PLEASE RESPOND
A.S.A.P.

A P P E N D I X    "F"

Campbell aim their radar guns into oncoming traffic crackdown on speeding, involving officers from 100 citations.

RICHARD GREEN/THE SALINAS CALIFORNIAN

# ls cited

## rackdown in Prunedale

Lane exits, stopping drivers going over the 55 mph speed limit.

"The point is to slow drivers down," said CHP Sgt. Ray Paulk.

The CHP has called the Prunedale portion of Highway 101 the area's most dangerous stretch of road. Paulk said the CHP tries to have operations like Thursday's five or six times a year along dangerous stretches.

The operation was part of the 0-p.m. time CHP's plan to lower the number of traffic accidents, reduce speeding and increase the use of seat belts.

intral
ip, in fatal
n Monterey
mai before
r vehicular
deaths. In
crashes

od drivers.
stationed
l and Ralph

tion that an additional 27,000 SAT tests had not been rescanned for errors. **Page 1B**

### BUSINESS

ostages
rtormed a
d three
bound
four-
**ge 1B**

**Newspaper union will bid**

An investment firm working with a union plans to submit a bid for all 12 newspapers The McClatchy Co. is selling. **Page 6B**

### SPORTS

SATs
were
e revela-

**Bulldogs out; Bruins move on**

UCLA, which scored the final 11 points over Gonzaga, will go to the regional final. **Page 1C**

ports circulated materials only in English and not in Spanish, while collecting signatures to qualify it for the ballot.

Ware agreed with three county residents who sued the county in February, saying the measure failed to meet the federal requirement that translations of ballot information be provided for voters who don't speak English.

"(Ware's ruling is) consistent with the purpose of extending the bilingual election requirements to all aspects of the electoral process," said Joaquin Avila, assistant professor of law at Seattle University and a lawyer for the plaintiffs in the voting rights case. "For that reason, it's a good opinion."

The judge's ruling says it's the county's obligation to put a properly circulated initiative before voters and that it would have violated federal law had it placed the measure before voters in June.

Ware's ruling relied heavily on

the Padilla decision, a ruling made by a three-judge panel of the Ninth Circuit Court of Appeals that was filed Nov. 23 and requires recall petition materials be translated into minority languages, following the provisions of the Voting Rights Act. The decision is under review by a full panel of Ninth Circuit judges.

General plan initiative supporters collected more than 16,000 signatures — a majority of which were certified by county Registrar of Voters Tony Anchundo — to place the measure on the ballot.

Initiative supporters sued after the Monterey County Board of Supervisors voted 3-2 on Feb. 28 to keep it off the ballot, saying the measure would pose an intrusion on state housing and annexation laws. In the meantime, another group had already filed the voting rights suit.

See PETITIONS, Page 3A

COURTS

# Salinas-based lawyer pleads guilty to theft

*Man took more than $400,000 in clients' settlement money, prosecutors say*

Staff report

A Salinas-based attorney has pleaded guilty to misappropriating funds belonging to three clients and must pay more than $400,000 in restitution, prosecutors said Thursday.

Michael Y. Alvarez, an attorney

## WHAT'S NEXT

Michael Y. Alvarez, who practices civil and criminal law in Monterey County, is scheduled to be sentenced May 25 for grand theft.

who practices civil and criminal law, committed the crimes between 1997 and 2004, the Monterey County District Attorney's Office said in a statement.

Alvarez accepted large civil settlements on behalf of his clients and then failed to disburse the money, prosecutors said.

See THEFT, Page 3A


weekly
listings and career opportunities nationwide.

www.thecalifornian.com

2006

# Alvarez fled after agreeing to pay $412,000 and facing jail time

**By CHRISTOPHER ORTIZ**
The Salinas Californian

The search continues for a Salinas attorney who vanished this spring after being convicted of stealing money from clients, authorities said last week.

In May, personal injury and criminal lawyer Michael Y. Alvarez pleaded guilty to three counts of grand theft after unlawfully taking more than $400,000 from three customers between 1997 and 2004.

To avoid up to six years in prison, Alvarez agreed to pay $412,000 in restitution, serve a year in Monterey County jail and felony probation.

But during a hearing with a *continue*

**ONLINE**

**CRIME:** Follow this news topic at www.thecalifornian.com.

judge in May to ask for more time to pay off his debt, Alvarez stepped out of the courtroom and never came back.

An arrest warrant has since been issued for Alvarez.

Deputy District Attorney Lisa ____ who tried the case, said beside having the defendant flee, the case was peculiar.

"It's not often that you prosecute an attorney, and in this case, someone who regularly appeared in our courtroom," Poll said.

She said that the District Attorney's Office has assigned an investigator to track down Alvarez and that her office has been in contact with family and friends to see if they know where he is hiding.

---

*From Page 1A*

Alvarez's attorney, Miguel Hernandez, declined to comment, saying "it would be inappropriate."

One allegation against Alvarez was that he kept all but $5,000 of a $300,000 settlement from a client injured in a car crash.

Personal injury attorney Chuck Warner, who has no connection to the case, said Alvarez's actions don't reflect the vast majority of attorneys in Monterey County.

"What he did was really embarrassing to those who are trying to do an honest living," said Warner, who's practiced law in Monterey County for 25 years. "Him taking off was undoubtedly wrong."

He said he hopes the incident doesn't turn potential clients away from his office or others.

"You don't know how many clients don't come in because of him," Warner said.

Although most lawyers are

---

*continue*

Anyone with information on the whereabouts of Michael Y. Alvarez is asked to call the Monterey County District Attorney's Office at 755-5070.

honest, attorney Andrew Swartz said, people should do a bit of research before hiring legal counsel.

A good starting point, Swartz said, is checking an attorney's record on the State Bar of California's Web site.

people can check whether an attorney has been disciplined and his or her standing with the Bar. The "Attorney Search" link is at the upper-right corner of the home page. To file a complaint against an attorney, contact the state Bar at (213)765-2299.

He also suggested interviewing more than one attorney and asking around about their reputations.

"Determine who you are more comfortable with," Swartz said. "Make sure you

with that person."

Swartz said Monterey County's lawyers have a good reputation that should-

"One bad apple does not spoil all the good, hard working attorneys," Swartz said.

# NS/ Ruling lawyer says

according to one raised the initiative ulated before October and

's will appeal to the Ninth of Appeals a request for aring, so the ll go on the ty can't get a or June, Fitz supporters pecial elec-

er, a lawyer porters, said ion unfairly nts because l to comply v. Woocher cision gives it wants — he June bal-

tiatives up ate that are on as ours," nd the tim-art's ruling em vulner-ction legal

s, a lawyer Gunther, a San Fran-represent-said Ware's find the federal law eceived the intent to on a month

## IMPACT

U.S. District Judge James Ware's ruling Thursday keeps Monterey County's general plan initiative off the June ballot, for now. Initiative backers plan to appeal his ruling.

before the Padilla decision.

"I don't think it finds the county at fault," Roberts said. "Had the board gone ahead and put it on the ballot, then I think you could argue they were at fault."

### Judge 'flat-out wrong'

When initiative backers appeal, the county's legal arguments against the initiative probably won't change dramatically, Roberts said.

Woocher said Ware's decision is rife with errors, and because of incorrect dates in the opinion, Ware's ruling is based on a false premise.

"The judge got the facts flat-out wrong, and it's unbeliev-ably annoying," Woocher said.

In his opinion, Ware wrote, "This court finds that the 'Padilla' court's rationale with respect to recall petitions applies equally and perhaps more strongly to California initiative petitions because of the extensive (county) involvement in the initiative process."

County election officials, Ware wrote, not only review initiative-petition materials

but draft a portion that is crit-ical to the public's under-standing of what they are signing.

"(Ware is) extending that (Padilla) case, but not break-ing radical new ground," said Pamela Karlan, professor of public interest law at Stan-ford University Law School.

The general plan initiative would concentrate develop-ment in cities and five com-munity areas, including Boronda, Castroville, Chualar, Fort Ord and Pajaro. It also would limit new subdivisions outside cities and community areas and require new devel-opments to have 30 percent housing for low- and moder-ate-income people — 40 per-cent if the developments are built on public land.

The initiative is opposed by many business interests and some affordable-housing advocates.

Meanwhile, the county is advancing with its fourth draft of the general plan in the past six years, with offi-cials hoping that, unlike the previous drafts, this one will receive approval from the Board of Supervisors.

Supervisors are scheduled to vote on the new draft by late July or early August. It has the support of county business interests, including agriculture and tourism.

Contact Dawn Withers
at withers@thecalifornian.com.

# THEFT/ Attorney took thousands from his clients, prosecutors say

From Page 1A

Alvarez pleaded guilty to three counts of grand theft and admitted to a white-col-lar crime enhancement, which applies when more than $100,000 is taken.

One client received a $300,000 settlement after a car accident left him in a wheelchair and unable to work, the district attorney's office said.

Alvarez failed to turn this money over to the man and failed to pay his medical bills, and the client ended up homeless and living in a van, prosecutors said.

The resolution of the case includes restitution for three named victims and eight others who also were

the defendant's clients, the district attorney's office said.

If Alvarez pays the $412,000 restitution in full by his May 25 sentencing, he will receive felony probation and 365 days in county jail, prosecutors said.

If he fails to pay it in full by that date, he will receive a sentence of up to six years and four months in prison, the district attorney's office said.

ESTABLISHED IN 1871

## The Salinas Californian

SERVING THE SALINAS VALLEY
AND MONTEREY COUNTY

The Salinas Californian
(478-1201) is published
Monday-Saturday morning
by Salinas Newspapers, Inc.
123 W. Alisal St. PO Box 81091,
Salinas, CA 93901-2644
Phone (831) 424-2221 or 649-6676
TTY (831) 754-4206.
A Gannett Newspaper.

Periodicals postage paid at Salinas,
CA. postmaster: Send address changes
to The Salinas Californian,
P.O. Box 81091,
Salinas, CA 93912-1091



# says he's 'deeply sorry'

ation about Raul Oaks, who investigates in a obbery in l to call the eriff's

eting my

acts have caused to your fam-ily," he said with his dark hair slicked back in a pony tail.

Tsukimura's mother, Deb Catanesi, cried during the reading of the letter. Catanesi was sitting with Tsukimura's brother and sister, who was wearing the athlete's letter-man jacket.

"I appreciate his state-ment," Catanesi said after the sentencing. "It is helpful

that he showed remorse."

Tsukimura's father, Russ Tsukimura, said outside the courtroom that he hopes the third suspect will turn him-self in and that he wishes the best for Alcaraz.

"Hopefully, he can turn things around for himself," he said.

Contact Zachary Stahl
at zstahl@thecalifornian.com.

*Owners & Managers:*



NOW OPEN — NORTH MAIN SHELL
1198 N. MAIN
449-4566

SMOG CHECK — Smog Check
$5.00

SALE • SALE • SALE • SALE • SALE • SALE • SALE

# 30% OFF

## Everything!
## Everything!
## Everything!

*Celebrating our 56th year Anniversary*

M'Lady &
Uniform
Included

DICK BRUHN

300
Main St.

**A P P E N D I X    "G"**

BEFORE THE CLIENT SECURITY FUND COMMISSION

THE STATE BAR OF CALIFORNIA

| | | |
|---|---|---|
| Application of JOSE M. AVALOS | ) | 07-F-11074 |
| & GRACIELA AVALOS | ) | |
| | ) | |
| | ) | TENTATIVE DECISION |
| MIKE Y. ALVAREZ, Respondent | ) | |

The Client Security Fund Application of JOSE M. AVALOS AND
GRACIELA AVALOS (hereinafter referred to as "Applicants") in
which they requested reimbursement of $8,000.00 was considered by
the Client Security Fund Commission. Based on the following
Findings of Fact and Conclusions of Law, the Commission proposes
to reimburse Applicant $5,300.00 BY WAY OF CHECK MADE PAYABLE TO
GRACIELA AVALOS from the Fund.

### FINDINGS OF FACT

1.  From in or about February of 2004, through February of
2006, Applicants paid MIKE Y. ALVAREZ (hereinafter referred to as
"Respondent"), to represent Applicant Jose in the appeal of a
criminal matter. The funds were paid to Respondent by Applicant
Graciela.

2.  Applicants have requested reimbursement of $8,000.00,
but have been able to provide documentary proof of only
$5,300.00. Applicant Graciela has submitted a declaration that
she paid the additional $2,700.00 to Respondent, but she does not
have the documentary proof.

3.  Applicants claim that Respondent did no work on the
matter, and failed to communicate with them.

4.  Respondent was not an active member of the State Bar at
all times relevant to this application. Effective September 16,
2004, Respondent was listed as not entitled to practice.
Respondent remained on this status until his resignation with
charges pending was accepted by the Supreme Court effective July
28, 2005.

5.   This application was filed within four years of the reasonable discovery of the loss.

6.   Neither Applicant is a close relative, partner, associate, employer or employee, insurer or surety, or any business entity controlled by Respondent.

7.   Applicants' loss was not covered by any insurance or by any fidelity or other similar bond or fund.

Based on the foregoing Findings of Fact, the Commission concludes as follows:

## CONCLUSIONS OF LAW

1.   The requirements of Rules 3, 7, 8, 9(a) and 9(b) have been met.

2.   Applicants have established that $5,300.00 came into Respondent's hands as required under Rule 2.   The Commission concludes that this constitutes an illegal fee as Respondent was not licensed to practice law at the time he accepted some of the funds.   Respondent's wrongful acceptance and retention of these funds falls within the scope of Rule 6(a).

3.   Although Respondent was not an active member of the State Bar at the time he received these funds, as required under Rule 2, the Commission hereby waives this requirement in the interest of justice and for good cause shown pursuant to Rule 30.

4.   The Client Security Fund Commission requires documentary evidence to establish the amount of a loss for it to be reimbursable. Applicants are required to provide documentary evidence that money or property came into the hands of the attorney. Such evidence would be copies of receipts, copies of the back and front of cancelled checks, copies of written acknowledgments by the attorney and/or copies of contracts/retainer agreements.

07-F-11074                          -2-

5.  Applicants have been able to provide documentary proof of only $5,300.00. Unfortunately, the remaining amount they have requested is not reimbursable under the rules of the Fund. Applicants have suffered a reimbursable loss of $5,300.00 within the meaning of Rules 2 and 6.

WHEREFORE, THE COMMISSION DIRECTS THAT:

The Applicant, JOSE M. AVALOS AND GRACIELA AVALOS, be reimbursed $5,300.00 BY WAY OF CHECK MADE PAYABLE TO GRACIELA AVALOS from the Client Security Fund.  This decision is based solely on the Rules of Procedure, Client Security Fund Matters.

DATE: **NOV 2 9 2007**

**THE STATE BAR OF CALIFORNIA**
*The Client Security Fund Commission*

THE CLIENT SECURITY FUND COMMISSION

### NOTICE

**Under Business and Professions Code Section 6140.5, any amount reimbursed from the Client Security Fund shall be added to the annual membership dues of the attorney causing the loss, along with interest and procedural costs, if the attorney is publicly reproved or suspended.  For any attorney who resigns with disciplinary charges pending, or for any attorney who is suspended or disbarred, restitution or any reimbursed amount, along with applicable interest and costs, shall be paid as a condition of reinstatement.**

## DECLARATION OF SERVICE

I the undersigned, over the age of 18 years, whose business address
and place of employment is the State Bar of California, Client
Security Fund, 1149 S. Hill Street, Los Angeles, CA 90015-2299.

I declare that I am not a party to the within action; that I am
readily familiar with the State Bar of California's practice for
collection and processing of correspondence for mailing with the
United States Postal Service; that in the ordinary course of the State
Bar of California's practice, correspondence collected and processed
by the State Bar of California would be deposited with the United
States Postal Service that same day; that in the City and County of
Los Angeles, on the date shown below, I deposited or placed for
collection and mailing a true copy of the within

TENTATIVE DECISION 07-F-11074

placed for collection and deposit in and mailing with the United
States Postal Service, following the State Bar of California's
ordinary business practices, addressed to:

PERSONAL AND CONFIDENTIAL

MIKE Y. ALVAREZ                      JOSE M. ALVALOS
984 LUPIN DR STE 3                   T-62425 RA-321L
SALINAS CA 93906 3956                PO BOX 705 NORTH FACILITY
                                     SOLEDAD CA 93960 0705

                                     GRACIELA AVALOS
                                     1190 POLK ST
                                     SALINAS CA 93906

Dated: _____ 11 / 30 / 07 _____

I declare under penalty of perjury at
Los Angeles, California, on date shown
above, that the foregoing is true and
correct.

Linda Kim
Administrative Assistant
Client Security Fund

1              DECLARATION OF SERVICE BY MAIL

2

3   CASE NAME:____Avalos v. Curry_____

4   CASE NO.:_____U/A_____

5

6   I, Jose Miguel Avalos____, declare that I am over the age of eight-

7   teen (18) years; I am/am not a party to the attached action; I

8   served the attached document entitled: MOTION TO ENTERTAIN

9   PETITION FOR WRIT OF HABEAS CORPUS WITH ATTACHED EXHIBITS

10

11  on the persons/parties specified below by placing a true copy of

12  said document into a sealed envelope with the appropriate postage

13  affixed thereto and surrendering said envelope(s) to the staff of

14  the Correctional Training Facility entrusted with the logging and

15  mailing of inmate legal mail addressed as follows:

16  UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA
17  280 SOUTH FIRST STREET, ROOM 2112
    SAN JOSE, CALIF. 95113-3095

18

19  OFFICE OF THE ATTORNEY GENERAL
    OF THE STATE OF CALIFORNIA
    455 GOLDEN GATE AVENUE
20  SAN FRANCISCO, CALIF. 94102-7004

21  There is First Class mail delivery service by the United States

22  Post Office between the place of mailing and the addresses indi-

23  cated above.  I declare under the penalty of perjury under the laws

24  of the United States and the State of California that the foregoing

25  is true and correct and that I executed this service this ___3___

26  day of __January__, in Soledad, CA.

27

28                                        Declarant